J-A30041-18

2019 PA Super 146

E.B.                                          :    IN THE SUPERIOR COURT OF
                                              :          PENNSYLVANIA
              Appellee                        :
                                              :
        v.                                    :
                                              :
D.B.                                          :
                                              :
              Appellant                       :    No. 1080 WDA 2018

Appeal from the Order Entered June 25, 2018
in the Court of Common Pleas of Allegheny County
Family Court at No(s): FD 04-008554-009

BEFORE:   SHOGAN, J., KUNSELMAN, J. and STRASSBURGER, J.*

OPINION BY STRASSBURGER, J.:                              **FILED MAY 6, 2019**

        D.B. (Father) appeals from the order entered June 25, 2018, in the

Court of Common Pleas of Allegheny County, which decreased the number of

days Father exercised physical custody of his daughter, K.B. (Child), who

was born in October 2002 to Father and E.B. (Mother).   Father also

challenges the trial court's August 31, 2017 interim order and the court's

denial of his motions for special relief in March 1, 2018 and July 2, 2018

orders.   Upon review, we affirm the August 31, 2017 order; vacate the

March 1, 2018 order summarily refusing to reinstate all prior orders; vacate

the June 25, 2018 order in part and affirm in part; vacate the July 2, 2018

order; and remand for proceedings consistent with this opinion.

        We summarize the relevant facts and extended procedural history of

this case as follows.  Mother and Father married in April 2000, and divorced

_____

* Retired Senior Judge assigned to the Superior Court.

in March 2005. Child was born during the marriage, and Father and Mother have been engaged in continual litigation regarding custody of Child since their separation when she was two years old.

Initially, the parties shared custody pursuant to their 2004 marriage settlement agreement. In May 2005, Mother filed a petition seeking primary custody of Child. In response, Father filed a counter-petition seeking to enforce the shared custody provision in the marriage settlement agreement and to prevent Mother from relocating to Virginia with Child. He also presented a counterclaim for primary custody.

Via a May 23, 2005 order, the trial court prohibited Mother from relocating with Child or exercising custody of Child in Virginia without mutual agreement of the parties or leave of court. While the cross-custody petitions were still pending, Father filed a motion for contempt, averring that Mother took Child to Virginia in violation of the May 23, 2005 order. Following a hearing in August 2005, the trial court found Mother to be in contempt and ordered her to refrain from taking Child outside Allegheny County for more than three overnights during Mother's two-week custody periods without Father's prior written agreement.[1]

---

[1] In early 2006, Father filed a second petition for contempt, averring that Mother was spending more time in Virginia with Child than was permitted by the August 2005 order, but the hearing regarding Father's petition ultimately was continued by consent. Later that year, in response to a petition for special relief filed by Father, the trial court entered an order, which, *inter alia*, restricted a particular male with a criminal background from being
*(Footnote Continued Next Page)*

After multiple delays, the cross-petitions for custody were eventually resolved by a July 3, 2007 consent order. Pursuant to the terms of that consent order, Mother and Father shared legal and physical custody of Child, with each exercising physical custody on a two-week basis. In addition, each parent was permitted one overnight per week during his or her non-custodial period upon request and 24 hours' notice. Further, the custodial parent was required to provide the non-custodial parent with the right of first refusal when the custodial parent was unavailable to care for Child.

In April 2008, Father filed a petition to reinstate his complaint for primary legal and physical custody and for special relief seeking entry of an interim order, citing concerns about Child's encopresis.[2] On July 24, 2008, the trial court entered an interim order directing the parents' participation in co-parenting counseling and Child's enrollment in kindergarten in Plum School District where both parties resided. Father's petition was resolved by an October 21, 2008 consent order, in which the parties agreed, *inter alia*, that Father would exercise physical custody for approximately two-thirds of the time during the school year, and the parties would share custody during the summer. This arrangement resulted in Father having custody of Child for

*(Footnote Continued)* ———————

around Child or in Mother's home during Mother's custodial periods, and ordered Child to continue attending the same preschool.

[2] Encopresis is fecal soiling in places other than the toilet.

19 days each month during the school year and Mother having custody of Child for the remaining days.

In 2012, disputes arose over legal custody, prompting Father to file a petition to modify the October 21, 2008 order in an attempt to obtain primary legal custody. Following Father's petition, the trial court entered a series of orders addressing disputes over Child's schooling and medical care and continued Father's petition generally.

In 2014, Father filed a motion for special relief requesting permission to change Child's school district in anticipation of purchasing a new house. Mother responded by filing a petition to modify custody, seeking 50/50 physical custody and an order for Child to remain in the Plum School District. Following a hearing regarding school choice, the trial court ordered the parties to continue sharing legal custody, but granted Mother the authority to choose Child's school. Father appealed, and this Court affirmed the trial court's order in 2015. *D.B. v. E.B.*, 118 A.3d 450 (Pa. Super. 2015) (unpublished memorandum).

Meanwhile, while the school-choice appeal was being resolved by this Court, Father filed a counter-petition to modify physical custody, and requested that the court increase his custodial days because Mother allegedly left Child with other caregivers frequently during her custody period and did not participate in Child's extracurricular activities. Father also filed a petition for contempt regarding a range of issues. These matters were resolved by an October 16, 2014 consent order which, *inter alia*,

specified that: Mother must respond to communications from Father regarding custody issues within 48 hours; the parties may not discuss custody matters with Child or use Child as a messenger; Mother must refrain from using Child's cell phone for her own personal texts; Mother must promptly notify Father of changes in Child's before- or after-school care; and Mother must ensure that Child is prepared for school and extracurricular activities on her custodial days.

In December 2014, Father filed another petition for contempt, resulting in a December 14, 2014 interim order enjoining Mother from changing Child's school, busing, or child care arrangements. Following a hearing, Mother was found in contempt, and the trial court ordered prior orders from July 2, 2007, October 21, 2008, June 3, 2014, and October 16, 2014, to remain in full force and effect. It also required the parties to continue to engage in co-parenting sessions (followed by a joint memorandum of understanding as to what was agreed upon). It permitted Mother to purge her contempt by refraining from using Child as a messenger regarding custody-related matters; discussing custody matters with Child; adhering strictly to the right of first-refusal; following the recommendations of Child's medical providers; timely responding to communications regarding Child; refraining from using Child's cell phone for personal purposes; promptly advising Father of changes to transportation arrangements for Child; ensuring Child was prepared for school and extracurricular activities; exchanging Child's musical instrument during custodial exchanges; and

giving Father prior notice before withdrawing Child from after-school activities early.

On March 17, 2015, Mother and Father entered into another consent order, whereby they agreed, *inter alia*, that all prior orders remained in effect except any provisions that conflicted with the current order; Mother would coordinate Child's practice of her harp at Father's home during her custodial periods; the parties would refrain from using Child's cell phone; and the parties would adhere to a particular transportation schedule for Child's school, after-school care, and extracurricular activities.

On November 16, 2016, the trial court entered an order finding Mother in contempt of the July 2, 2007, October 21, 2008, June 3, 2014, and October 16, 2014 court orders.[3] It permitted Mother to purge the contempt by identifying co-habitants and caregivers; communicating with Father regarding Child's transportation arrangements; ceasing all communication with Child regarding custody issues; acknowledging that Father's wife[4] constituted family within the scope of the right of first-refusal provision; and ceasing to disseminate information regarding Father and his wife to third parties via social media.

---

[3] Presumably, this was preceded by a petition for contempt, but no such petition appears in the record.

[4] The record does not reveal when Father re-married.

On March 2, 2017, Father filed another motion for contempt, averring that Mother refused to provide the telephone number of Child's caregivers, including an individual who provided care for a weekend in Harrisburg; refused to bring Child over to Father's house to practice her harp; obtained a job interview for Child without Father's knowledge or consent; and regularly was not at home when Father dropped Child off at Mother's house.[5] Following a conciliation on April 13, 2017, the trial court[6] ordered Mother "to continue to comply with custody order," but did not specify which one, and stated that Father "preserv[ed his] request for counsel fees." Order, 4/13/2017, at 2.

On May 19, 2017, Mother filed the petition for modification of custody that is the subject of this appeal. In the petition, she requested shared physical custody on a 50/50 basis as opposed to Father having physical custody 2/3 of the time, averring simply that she believed it to be in Child's best interest and could easily be achieved because the parties resided close to each other. Petition for Modification of Custody Order, 5/19/2017, at ¶¶ 3-4. Father filed an answer, and the trial court scheduled the case for a judicial conciliation.

---

[5] The motion also averred that Mother was in contempt of a child support order; such order is not relevant to this appeal.

[6] The trial judge assigned to the case had changed by this juncture.

The record does not reveal what transpired during the August 31, 2017 judicial conciliation, but subsequently, the trial court entered an interim order of court (Interim Order), wherein it ordered the parties to share legal and physical custody of Child. Interim Order, 8/31/2017, at ¶¶1-2. Regarding the latter, the trial court ordered the parties to agree to a schedule, and in the event the parties could not agree, the court imposed a 2-2-3 day schedule.[7] *Id.* at ¶ 2. The order also set forth various provisions regarding both legal and physical custody, including a provision requiring each party to give the other parent an opportunity to spend time with Child should the custodial parent be unavailable for more than eight hours. *Id.* at ¶ 16. The order superseded all prior orders of court and granted the parties leave to engage in discovery. *Id.* at ¶¶ 17, 20.

In February 2018, Father filed two motions for special relief. The first sought reinstatement of all prior custody orders. Father argued that the Interim Order had caused multiple conflicts because it eliminated all of the

---

[7] According to Father's motion for special relief discussed *infra*, the parties could not agree on a schedule and followed the 2-2-3 day schedule imposed by the order. *See* Father's Motion for Special Relief - A, 2/23/2018, at ¶ 13. The 2-2-3 day schedule imposed by the trial court meant the parties continually alternated days in two and three day increments. Interim Order, 8/31/2017, at Exhibit A. For example, Father would have custody on Monday and Tuesday, Mother would have custody on Wednesday and Thursday, and Father would have custody on Friday through Sunday. *Id.* Then the following week, Mother would have custody on Monday and Tuesday, Father would have custody on Wednesday and Thursday, and Mother would have custody on Friday through Sunday. *Id.* The wisdom of the 2-2-3 day schedule is not at issue here.

previous detailed orders and was a form order not specific to Child's needs. Specifically, he averred that prior to the Interim Order, Child had been bused to Father's house after school to allow Father to transport Child to her activities even on nights Mother had custody. Since the Interim Order eliminated this arrangement, Mother had not transported Child to certain activities during Mother's custody periods. Father's Motion for Special Relief - A, 2/23/2018, at ¶¶ 16-21. He also averred that since the Interim Order no longer required Mother to coordinate harp practice for Child, Child had missed 36 days of practice. *Id.* at ¶¶ 22-24. Finally, he averred that because the Interim Order no longer required Mother to respond to Father within 48 hours, Mother's communication with Father regarding custody matters had suffered greatly. *Id.* at ¶¶ 26-29.

In the second motion, Father requested an order granting him additional custody time with Child when Mother was unavailable during her custody time, on Child's upcoming days off from school, and for the purpose of accompanying Child on a college visit. Specifically, Father averred that he learned that Mother had obtained employment in Harrisburg, resulting in Mother's leaving Child home alone often. Father's Motion for Special Relief - B, 2/23/2018, at ¶ 14. He also alleged that Mother willfully failed to disclose her employment at the time of the August 31, 2017 judicial conciliation. *Id.* at 16-17.

On March 1, 2018, the trial court denied both motions without further explanation, except it permitted Father to take Child on the college visit. Orders of Court, 3/1/2018.

On April 24, 2018, Father filed a petition for contempt, averring that Mother failed to follow the Interim Order by engaging in the following behaviors: (1) failing to ensure that Father was afforded an adequate opportunity to speak with Child by telephone during his non-custodial period; (2) encouraging Child to provide reports about Father and/or his household to Mother; (3) alienating Child's affections from Father; (4) discussing adult issues with Child; (5) failing to offer Father a right of first refusal; (6) failing to provide contact information and other relevant information about Child's caregivers; and (7) failing to provide full responses to Father's discovery requests. Petition for Contempt, 4/24/2018, at ¶ 7. Father also requested an award of counsel fees. The trial court granted Father's request to consolidate the contempt petition with the custody trial on Mother's pending modification of custody petition. Order of Court, 4/24/2018, at 1.

A custody trial was conducted on April 27, 2018. At the hearing, the parties testified on their own behalves, the trial court interviewed Child *in camera*, and Father offered 26 exhibits into evidence.

While the trial court's decision was still pending, Father filed a motion for special relief.[8] In the motion, he informed the court that he recently had learned that the trustee in Mother's pending Chapter 13 bankruptcy case was pursuing a wage attachment against Mother's wages from University of Maryland Capital Region Health, which suggested that Mother was employed in Maryland. Father's Motion for Special Relief, 7/2/2018, at ¶¶ 7-9. Father then detailed evidence regarding Mother's past history of untruthfulness about her employment schedule and availability to spend time with Child. *Id.* at ¶¶ 10-15. He requested that the court (1) suspend the Interim Order; (2) require Mother to produce information regarding her employment in Maryland; (3) require Mother to meet her burden of demonstrating that shared custody was in Child's best interest and that Mother was actually available to parent Child during her custodial period; and (4) award Father counsel fees pursuant to 23 Pa.C.S. § 5339. *See generally id.*

On June 19, 2018, Father filed a motion for special relief, requesting that the trial court order Mother, *inter alia*, to sign and return travel documentation needed for Child to travel to Canada with Father and permit

_____

[8] The motion was not docketed until July 2, 2018. It appears there may have been a delay in docketing this motion, as the motion referenced being filed prior to the entry of the Interim Order and noticed presentation of the motion for June 4, 2018. In its Pa.R.A.P. 1925(a) opinion, the trial court acknowledged that the motion was presented on June 4, 2018, while its decision from modification-of-custody trial was still pending. Trial Court Opinion, 8/27/2018, at 11.

Child to stay at her step-grandparents' home during Mother's custody time to facilitate her attendance at harp camp and avoid lengthy transport periods by Father. He also requested that the court award reasonable counsel fees. Father argued that Mother has a history of ignoring his requests to facilitate travel arrangements for Child, resulting in the October 16, 2014 order requiring Mother to execute timely documentation enabling Child to travel. Father requested that the court reinstate this provision, which had been eliminated by the Interim Order's supersession of all prior orders. He also alleged that Mother ignored his requests and boasted in an email that she was going to force him to seek judicial intervention, and due to this obdurate and vexatious conduct, the court should award counsel fees pursuant to 23 Pa.C.S. § 5339. Motion for Special Relief, 6/18/2018, at ¶¶ 6-34.

On June 19, 2018, the trial court entered an order requiring Mother to sign the consent authorizing Child's travel to Canada, but denied Father's request for Child to stay with her step-grandparents during all five days of harp camp. Order, 6/19/2018, at 1. Instead, the trial court permitted Child to stay with her step-grandparents on Father's custodial days and required Mother to provide timely transportation to and from camp for Child on Mother's custodial days. *Id.* The trial court deferred the issue of Father's request for counsel fees until it decided the modification-of-custody matter. *Id.*

On June 25, 2018, the trial court issued an order ruling upon Mother's petition for modification of custody and Father's petition for contempt (Final

Order).   In the Final Order, the trial court analyzed the sixteen custody factors set forth at 23 Pa.C.S. § 5328(a), and concluded that it was in Child's best interest for Mother and Father to share custody equally.   Final Order, 6/25/2018, at 7-10.   It ordered Mother and Father to share legal custody and set forth provisions detailing the requirements of such shared legal custody.  *Id.* at 11-13.

Regarding physical custody, the trial court specified that Father had custody on Mondays and Wednesdays, and every other Friday, Saturday, and Sunday, and Mother had custody on every Wednesday[9] and Thursday, and every other Friday, Saturday, and Sunday.  *Id.* at 13.  Each parent was required to provide contact information for caregivers used during the parent's respective custody periods.  *Id.* at 13.  Each parent needed to ensure that Child attended all activities, events, and appointments during the parent's custodial time.  *Id.* at 17.   Transportation was addressed broadly, requiring "the parties or [] another responsible individual selected by the respective parties" to transport Child during custody exchanges.  *Id.* at 17.   Additionally, each party was prohibited from using Child as an intermediary or encouraging Child to provide reports about the other party. *Id.* at 19.   Each non-custodial parent was provided with a right of first

_____

[9] The order refers to Wednesday twice.  It is likely that the first reference to Wednesday is a typographical error, and it should be Tuesday, which is not mentioned at all.

refusal in the event that the custodial parent was unavailable for five or more hours. *Id.* It also prohibited the parties from relocating with Child without adhering to 23 Pa.C.S. § 5337. *Id.* at 20.

Further, the court specified that the order "supersed[ed] all prior custody orders entered in this matter." *Id.* at 20. Finally, the trial court did not discuss any of the motions or petitions in detail; instead, it stated "[a]ll other pending [m]otions and/or [p]etitions in relation to custody are denied." *Id.* at 20.

Subsequently, the trial court entered an order denying Father's motion for special relief regarding Mother's alleged Maryland employment without explanation except to "see [the Final Order]." Order, 7/2/2018,[10] at 2.

Father timely filed a notice of appeal on July 23, 2018. Father and the trial court complied with Pa.R.A.P. 1925.[11] Father raises ten issues for our review. *See* Father's Brief at 27-29.

_____

[10] Like the motion for special relief regarding the alleged out-of-state employment, it appears there was a delay in docketing the order, as it was dated June 23, 2018.

[11] Robert J. Colaizzi, Esquire, has represented Mother in the proceedings below since 2014. As Mother's counsel, Attorney Colaizzi received notices on Mother's behalf regarding the appeal, and in response did not notify this Court of any changes regarding his representation of Mother. Mother neither filed an appellee brief nor notified this Court that she did not wish to participate in this appeal. This Court directed Attorney Colaizzi to appear at oral argument. There, Attorney Colaizzi informed the Court that Mother could not afford to pay him due to pending Chapter 13 bankruptcy
*(Footnote Continued Next Page)*

We consider Father's claims mindful of our well-settled standard of review.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted);

*see also M.A.T. v. G.S.T.*, 989 A.2d 11, 18 (Pa. Super. 2010) (*en banc*)

---

*(Footnote Continued)* ───────────────

proceedings. We direct Attorney Colaizzi's attention to the comment to Rule 1.3 of this Commonwealth's Rules of Professional Conduct, which provides that "[u]nless the relationship is terminated as provided in Rule 1.16 [(relating to declining or terminating representation)], a lawyer should carry through to conclusion all matters undertaken for a client." R.P.C. 1.3, Comment. The Rules of Professional Conduct permit a lawyer to withdraw in most circumstances if a client is unable to provide payment. *See* Rule 1.16(b)(5), (6). We note our disapproval of Attorney Colaizzi's failure to take steps to withdraw from his representation of Mother, because he effectively deprived Mother of the opportunity to file a brief *pro se* or obtain new representation.

Incidentally, we note that the automatic stay in bankruptcy matters does not apply to actions concerning child custody. *See* 11 U.S.C. § 362(b)(2)(A)(iii).

(noting that to constitute an abuse of discretion, a court's judgment must be "manifestly unreasonable" as shown by evidence of record).

Upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S. § 5338. Subsection 5328(a) of the Child Custody Act sets forth 16 factors that a court must consider before making any custody determination, including a modification of a custody order. **E.D. v. M.P.**, 33 A.3d 73, 79-80 (Pa. Super. 2011) (citing 23 Pa.C.S. § 5328(a)).

**Issues 1-3: Modification of Custody in Interim Order**

The first three issues Father raises relate to the trial court's modification of the parties' custody schedule in the Interim Order following the judicial conciliation, wherein the trial court changed Father's physical custody from primary to shared. Father asks us to decide whether the trial court abused its discretion or erred in modifying custody in the Interim Order because (1) modifying the long-standing and oft-litigated custody arrangement without a hearing deprived Father of due process; (2) modifying custody was not in the best interests of Child; and (3) the trial court did not delineate its reasons for the modification in open court, in the Interim Order, or in a written opinion. **See** Father's Brief at 37-52.

Before we address the merits of Father's first three issues, we first consider whether the Interim Order was mooted by the entry of the Final Order entered following trial. This Court has held that "we may *sua sponte* raise the issue of mootness, as we generally 'cannot decide moot or abstract

- 16 -

questions, nor can we enter a judgment or decree to which effect cannot be given.'" **In re L.Z.**, 91 A.3d 208, 212 (Pa. Super. 2014) (*en banc*), *rev'd on other grounds*, 111 A.3d 1164 (Pa. 2015).

There is no question that the trial court intended the Interim Order to apply on an interim basis until the parties conducted discovery and litigated Mother's modification petition at trial. **See** Interim Order, 8/31/2017, at 2, 11. The Final Order order then expressly superseded all prior orders, including the Interim Order. Final Order, 6/25/2018, at 20. Since the Interim Order is no longer in effect, it seems that the issues Father presents regarding the Interim Order are moot. **See K.W. v. S.L.**, 157 A.3d 498, 499 n.1 (Pa. Super. 2017) (holding parent's challenge to interim order replaced by another interim order was moot); **Ramer v. Ramer**, 914 A.2d 894, 899 (Pa. Super. 2006) (holding parent's challenge to failure to hold a hearing before entering interim order was moot because trial court conducted a hearing before entering a final order). Despite our general rule regarding mootness,

> this Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: 1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court.

**In re D.A.**, 801 A.2d 614, 616 (Pa. Super. 2002).

In ***Plowman v. Plowman***, 597 A.2d 701 (Pa. Super. 1991), we reviewed the merits of an interlocutory order permitting a mother to relocate with her child despite the existence of a later order entered after a full custody hearing. We reasoned that the order was reviewable because otherwise the relocation order would be likely to evade review due to its interlocutory nature.[12] ***Id.*** at 704-05. Since the order affected a substantial right of the non-custodial parent's access to the child and impacted the status quo that would later set the stage for the full custody trial, we concluded that we ought to review the proper procedures for entry of such an interim order. ***Id.***

As in ***Plowman***, we are satisfied that the questions presented concerning the Interim Order are "capable of repetition and apt to elude appellate review." ***Id.*** A custody proceeding, particularly a highly contentious one, continually produces issues that the trial court must decide on an interlocutory basis. The history of this case suggests that these

---

[12] The ***Plowman*** Court recognized that a party may seek certification to appeal an interlocutory order. But "[c]ertification of an interlocutory appeal is not automatic" and requires "certification from the lower court and permission from this court before an appeal may be had." ***Id.*** at 704. Although there certainly may be some custody orders that could satisfy the high bar for certification set forth in Pa.R.A.P. 702, it would not be the norm in light of the policy considerations for not disrupting a custody matter with piecemeal appeals. ***See G.B. v. M.M.B.***, 670 A.2d 714, 718-22 (Pa. 1996) (discussing the interlocutory, non-collateral nature of most interim custody orders and the reasons why piecemeal appeals are not in a child's best interest).

parties are likely to litigate continually aspects of their custody arrangement, and the trial court might again try to resolve their issues without conducting a full trial. Although the trial court entered the Interim Order on an interim basis, that interim basis lasted for almost ten months during discovery and pre-trial proceedings, and ultimately impacted the status quo the trial court had to consider at the custody trial. *See J.M. v. K.W.*, 164 A.3d 1260, 1268-69 (Pa. Super. 2017) (noting that a temporary order often "forms the *de facto* status quo regardless of its purported impermanence"). Therefore, because of the importance of ensuring that trial courts follow correct procedures when entering interlocutory custody orders that have significant impact on the final[13] custody decision, we will proceed to the merits.

In response to Mother's petition for modification, the trial court entered an order scheduling the case for a "judicial custody conciliation."[14]

_____

[13] Of course, "all custody awards are temporary insofar as they are subject to modification by an ensuing court order any time that it promotes the child's best interest. Thus, by force of circumstances, no award of child custody is permanent regardless of whether the order is styled as interim or final." *J.M.*, 164 A.3d at 1268.

[14] By way of background, the local rules in Allegheny County require a judge to conciliate custody matters before proceeding to trial. Pa. R. Allegheny Cty. Civ. Fam. 1930(c). Normally, parties must praecipe for a conciliation date, and only may do so after they proceed through all or some portions of the Generations program. *Id.*; Pa. R. Allegheny Cty. Civ. Fam. 1915.3(c)(iii), (iv); Court Manual for the Adult Section of Family Division of the Court of Common Pleas of Allegheny County (Court Manual) at § I(H)(3). The Generations program consists of court-provided education and mediation for adults and children involved in a custody matter. Pa. R.
*(Footnote Continued Next Page)*

Order, 5/19/2017, at 1 (capitalization altered). Father argues that this scheduling order did not put him on notice that the trial court would consider modifying "Father's long-standing award of primary physical custody" at the conciliation, which typically is a pre-cursor to a custody hearing in Allegheny County. Father's Brief at 39. He notes the conciliation merely constituted a discussion among the trial court and counsel in judicial chambers off the record without parties present or an opportunity to present evidence. *Id.* Thus, Father contends he was "blindsided" by the trial court's issuing *sua sponte* the Interim Order, which in effect granted the relief Mother was seeking in her bare-bones petition for modification without a full hearing on Father's challenge to same. *Id.* 39-45. Father argues that granting

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Allegheny Cty. Civ. Fam. 1915.3(c)(iii). If the parties are unable to resolve their custody conflict by consent order after mediation, or if the court orders the parties to do so, the parties then proceed to a conciliation by a child custody officer. Court Manual at § I(F)(1)-(16). If the parties do not resolve their dispute by a consent order following the custody conciliation by a child custody officer, the case may proceed to a hearing before a custody hearing officer, psychological evaluations and/or a home study, or a judicial conciliation to address whether psychological evaluations should be scheduled. *Id.* at § I(F)(5)-(8).

Despite all of the detail provided about the procedure up until this point in the process, neither the local rules nor the Court Manual establishes any procedures regarding the judicial conciliation. In the flow chart detailing the steps custody matters follow in Allegheny County, the judicial conciliation is listed as being part of the "Litigation Phase" that follows when the parties cannot reach a consent order at a conciliation before a child custody officer. *Id.* at § I(A). The only step following the judicial conciliation is a custody trial, suggesting that the conciliation is intended to be followed by a trial and the goal is to focus the issues for that trial. *Id.*

Mother's relief without a hearing violated his right to due process because of the lack of notice and the lack of an opportunity to be heard. *Id.* He further contends that the Interim Order "unjustly placed [F]ather in the position of having to fight to restore the prior status quo at the custody trial nearly [8] months later," resulting in the trial court's "looking for reasons to justify the interim award that it previously made in [Mother's] favor" and relieving Mother of her burden of proving that modification was in Child's best interest. *Id.* at 42.

In its Rule 1925(a) opinion, the trial court defended its Interim Order by noting that it was entered after the parties had made mutual filings regarding modification and after the parties' counsel had an opportunity for argument during the judicial conciliation. Trial Court Opinion, 8/27/2018, at 6. The trial court justified the order by relying upon its power to modify custody on a temporary basis. *Id.* (citing ***Choplosky v. Choplosky***, 584 A.2d 340 (Pa. Super. 1990) and ***Steele v. Steele***, 545 A.2d 376 (Pa. Super. 1988)). Finally, without further elaboration, the court stated that modifying the order on an interim basis was in Child's best interest. *Id.*

The Child Custody Act grants trial courts authority to enter into orders on an interim basis, providing that the court "may issue an interim award of custody to a party who has standing … in the manner prescribed by the Pennsylvania Rules of Civil Procedure governing special relief in custody matters." 23 Pa.C.S. § 5323(b). In relevant part, the rule governing special

relief provides that "[a]t any time after commencement of the action, the court may on application or its own motion grant appropriate interim or special relief. The relief may include, but is not limited to, the award of temporary legal or physical custody[.]" Pa.R.C.P. 1915.13. The official comment explains that the rule is intended to be a "broad provision empowering the court to provide special relief where appropriate." *Id.*, Comment.

However, due process is required during custody proceedings. We have previously described due process as "a concept incapable of exact definition. Rather, it is a flexible notion which calls for such procedural safeguards as a particular situation demands to ensure fundamental fairness to a potentially aggrieved litigant." *Plowman*, 597 A.2d at 705. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). This means that "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine witnesses." *Id.* (citation omitted).

This Court has considered the interplay between the special relief power of the trial court and due process before. In *Steele*, we considered whether a trial court could *sua sponte* modify a parent's partial custody during a hearing on a petition for contempt. This Court stated that the

appropriate manner to modify custody is in response to a petition for modification, but the trial court may modify custody temporarily "under appropriate circumstances … when it is in the best interest of the child to do so." *Steele*, 545 A.2d at 179. The basis for the trial court's authority is Rule 1915.13, which this Court has characterized as "a means to bring about emergency relief that [was] traditionally available under the writ of *habeas corpus*" in recognition that "circumstances may change abruptly" in custody matters. *Id.* Therefore, the *Steele* Court held that it was permissible for the trial court to enter an order temporarily suspending the prior custody order and requiring the father's visits to be supervised due to his "violent and irrational tendencies" until he completed a parenting class. *Id.*

*Choplosky* also involved the entry of a modification order following a contempt hearing. After the trial court *sua sponte* granted sole legal custody to the mother, the father filed an appeal contending that the modification in absence of a written petition deprived him of his right to due process of law. This Court agreed with the father, holding that the court erred by permanently modifying legal custody without notice and an opportunity to be heard. *Choplosky*, 584 A.2d at 342-43. This Court reasoned that

> [n]either party was on notice that the custody order, upon which the contempt proceedings were predicated, was itself to be at issue until the "contempt" proceedings were well underway. The degree to which the parties were allowed to freely argue facts regarding the appropriate custody of the children is inconsequential. However unabated or erudite the advocacy,

- 23 -

absent adequate notice or opportunity to prepare, neither we nor the trial court can assume that the parties have either sufficiently exposed the relevant facts or properly argued their significance. Consequently neither we nor the trial court can make an informed, yet quintessentially crucial judgment as to whether it was in the best interests of the children involved to give sole legal custody to their mother.

*Id.* at 343.

In *dictum*, this Court then stated that

[h]ad the trial court decided, and had the circumstances required that the custody of the children be only *temporarily* modified pursuant to Pa.R.C.P. 1915.13, our decision might have been different. Such "special relief" may in some cases be appropriate (and necessary) where the situation is such that, for example, temporary modification of custody or visitation rights would preserve the well-being of the children involved while the parties prepare to resolve more permanently the question of where and/or with whom the children should remain.

*Id.* (emphasis in original).

More recently, this Court considered whether Rule 1915.13 relief could be entered without a hearing. In *M.J.S. v. B.B.*, 172 A.3d 651 (Pa. Super 2017), the parents had no formal custody agreement. After the mother started using drugs, the father filed a petition to obtain primary custody of the child. After the trial court granted temporary physical custody to the father pending the hearing on his petition, the child's maternal grandmother filed an emergency petition to intervene, averring that she should have primary custody because the child had lived with her his entire life. Without a hearing, the trial court rescinded the temporary order granting the father custody, granted the grandmother's petition to intervene, and awarded the

grandmother emergency custody pending the hearings on the parties' dueling custody petitions.

On appeal from the final order awarding custody to maternal grandmother, the father argued that the trial court erred by entering an interim order without a hearing. This Court rejected his argument, stating that Rule 1915.13 "does not establish any specific procedure for the trial court to impose temporary special relief and, critically, it certainly does not require that the trial court schedule a hearing or listen to argument before special relief is awarded. Indeed, pursuant to Rule 1915.13, the court may grant relief *sua sponte*." *Id.* at 655.

Thus, **Steele**, **Choplosky** (albeit in *dictum*), and **M.J.S.** all indicate that the trial court had the authority and discretion pursuant to Rule 1915.13 to enter an interim order of custody without a hearing while the parties prepared to litigate more fully the issue of modification. Notwithstanding the trial court's general authority to enter an order of interim relief, there are limits to a trial court's discretion. **See J.M. v. K.W.**, 164 A.3d 1260, 1270 (Pa. Super. 2017) ("Under **appropriate** circumstances, a trial court may modify a custody order temporarily pursuant to Rule 1915.13.") (emphasis added).

In **M.J.S.**, because the parties had no custody agreement, some sort of arrangement had to be put in place while the parties litigated the issue of custody on a more long-term basis. Thus, it was reasonable and necessary

for the trial court to institute a temporary arrangement as a stopgap during litigation. *See S.W.D. v. S.A.R.*, 96 A.3d 396, 405 (Pa. Super. 2014) ("A court is given [authority to award custody on a temporary basis] so that it may address emergency situations and to protect a child until a final hearing can be held and a permanent custody order can be entered."). This Court also has approved of temporary relief if it would "preserve the well-being of the children involved while the parties prepare to resolve more permanently the question of where and/or with whom the children should remain." *J.M.*, 164 A.3d at 1270 (quoting *Choplosky*, 584 A.2d at 343)); *see also Steele*, 545 A.2d at 379 (holding temporary modification of visitation was warranted after trial court received evidence during a contempt proceeding of the father's inappropriate conduct around his children, resulting in the fashioning of an order designed to protect the children until the father took steps to change his behavior).

In the instant case, however, there was no emergency or apparent urgent need to preserve the well-being of Child. Mother's petition simply averred that custody on a 50/50 basis was in Child's best interest and could easily be achieved because the parties resided close to each other. Petition for Modification of Custody Order, 5/19/2017, at ¶¶ 3-4. As discussed *supra*, a trial court may order temporary relief, but only "under appropriate circumstances … when it is in the best interest of the child to do so." *Steele*, 545 A.2d at 179; *J.M.*, 164 A.3d at 1270. It may be that changing

the parties' long-standing custody arrangement to an equally shared one in August 2017 was in Child's best interest. However, the trial court offers no explanation as to why that was so, in contravention to 23 Pa.C.S. § 5323(d) ("The court shall delineate the reasons for its decision on the record in open court or in a written opinion or order.").

Moreover, the parties' long-standing custody arrangement had been litigated repeatedly, many times in relation to Mother's contemptuous behavior, culminating in a series of orders that painstakingly spelled out the details of the parties' arrangement. In one swoop, without the benefit of a hearing where the parties would have had advance notice to prepare and an opportunity to "sufficiently expose[] the relevant facts or properly argue[] their significance," *Choplosky*, 584 A.2d at 343, the trial court entered an order that was generic in nature and erased all of the prior orders that were tailored to the parties' and Child's needs.

In some circumstances entering an order without notice on a temporary basis may be necessary to address a child's best interest. The typical case for awarding temporary relief without a hearing is where the parents have recently separated and custody has never been litigated. That is a far cry from the instant case where the parties have been separated for 13 years prior to the August 31, 2017 Interim Order, and custody had been litigated ad nauseam over that 13-year period. In this case, it was an abuse of the trial court's discretion to alter the status quo without notice and an

opportunity to be heard after full preparation, without any apparent emergency or change in circumstances, without any explanation as to why it was in Child's best interest, and without considering the effect of eliminating years of detailed prior orders in exchange for an order not specifically tailored to the parties' and Child's needs.

Furthermore, while only temporary, an interim order often has a long-term impact going forward. In other contexts in litigation, status quo is used to refer to "the last actual, peaceable and lawful, non-contested status which preceded the controversy." *See, e.g., Miceli v. Unemployment Comp. Bd. of Review*, 549 A.2d 113, 116 (Pa. 1988). On the other hand, while our custody cases do not define status quo definitively, in practice because stability is typically in a child's best interest, once an interim change has been made on temporary basis, courts are hesitant to change a child's routine yet again.

For example, in *Plowman*, without a hearing, a trial court effectively permitted a mother to relocate to another state with a child on an interim basis pending a full hearing on the mother's petition for a custody modification. In determining that this was unreasonable, this Court stated that

> [t]he lower court was obligated to entertain a full evidentiary hearing on the issue of modification of custody before allowing even a *de facto* modification. The trial court here waited over one year before having a full evidentiary hearing on mother's custody modification petition. During this time period, father's ability to defend his position eroded because the more time [the

child] was allowed to stay in Maryland, the more it could be argued that it was in his best interests to remain in Maryland under the new status quo. Given the compelling interests of the non-custodial parent involved here, the court's delay in holding the evidentiary hearing was unreasonable.

*Plowman*, 597 A.2d at 706-07; *see also B.K.M. v. J.A.M.*, 50 A.3d 168, 175 (Pa. Super. 2012) (holding a trial court should have considered how "maintaining the status quo" may have been in children's best interests to continue their "stability and continuity" achieved in new country; although mother relocated with children prior to a full hearing, presumption against relocation expressed in 23 Pa.C.S. § 5337 does not require that the court completely ignore the last two years); *J.M.*, 164 A.3d at 1268 (describing how the slowness of "the judicial machinery" often turns an ostensibly temporary order into a "de facto status quo").

In this case, instead of Mother's having to prove affirmatively at a custody trial that a modification was in Child's best interest, Mother simply had to point to the new almost-ten-month-long de facto status quo created by the Interim Order, leaving Father with the uphill battle of arguing against that new de facto status quo in an attempt to claw back his prior long-term custody award.

Nevertheless, the relief that Father seeks is impossible to achieve. Father asks us to vacate the Interim Order, effectively re-setting the clock back to mid-2017. This is tantamount to "unringing the bell" and rewinding

the past two years of Child's life as if they never happened. This was the same problem this Court faced in **Plowman**:

> we cannot redress this error [*i.e.*, another trial judge's decision to permit the mother and child to relocate on an interim basis without a hearing] by eliminating all the proceedings that have occurred until this point. Our review must be based on the best interests of the child at the time of the present hearing. In custody proceedings, the paramount concern is the welfare of the children[;] all [other] considerations, including the rights of the parents, are subordinate to the children's physical, intellectual, moral, spiritual, and emotional well being. We cannot ignore the last two years of the child's life in Maryland as though they never occurred. Therefore, we find that the trial court was correct in determining that it would be useless to pass judgment on the prior decision, but could appropriately consider the effect of that decision on the welfare of the minor child.

**Plowman**, 597 A.2d at 707.

The inability to unring the bell or re-set the clock in custody cases is why it is all the more paramount for trial courts to abide by due process at all times with an eye towards a child's best interest. The very nature of custody cases mandates different procedures under different circumstances, but trial courts should be wary of upending the status quo prematurely without substantial justification that the change was warranted by a child's best interest. Accordingly, we conclude that the trial court abused its discretion, but as in **Plowman**, because the ultimate polestar is a child's best interest, we also are constrained not to disturb the Interim Order.

**Issues 4-6, 8**: **Modification of Custody in the Final Order**

Father's fourth through sixth and eighth issues[15] query whether the trial court abused its discretion or erred by awarding shared physical custody in the Final Order because: (4) the trial court misapplied the 23 Pa.C.S. § 5328(a) custody factors; (5) the modification was against the weight of evidence at trial and contrary to the best interests of Child; (6) Mother failed to meet her burden of proving that the modification was in Child's best interest; and (8) the trial court failed to consider adequately Mother's past and ongoing contempt of court in rendering its custody decision in the Final Order. *See* Father's Brief at 52-61, 65-67.

Specifically, Father argues that the trial court erred and abused its discretion by awarding custody to Mother when the trial court found 7 of the 16 custody factors set forth at 23 Pa.C.S. § 5328(a) favored Father, and 8 other factors were neutral or not an issue. Father's Brief at 57. Father contends that the only factor that favored Mother was Child's preference for an equally-shared custody arrangement. *Id.* Father maintains that the trial court was entitled to give weight to Child's preference, but not at the

---

[15] Unfortunately, the order Father presented his issues in his argument section did not track the order Father presented the issues in his Pa.R.A.P. 2116 Statement of Questions Involved. The goal of Rule 2119(a), which requires the appellant to divide the argument into as many parts as there are questions to be argued along with specific headings, is to organize the analysis in a logical fashion. *See* Pa.R.A.P. 2119(a). Our numbering of the issues refers to the order Father presented the issues in his Statement of Questions Involved. *See* Father's Brief at 27-29.

exclusion of all other factors, particularly because the households were not equally suitable. *Id.* at 56-61. Father also points to Mother's extensive history of contemptuous behavior. *Id.* at 65-67.

In its Rule 1925(a) opinion, the trial court noted that it had conducted a full analysis of all 16 factors in the Final Order. Trial Court Opinion, 8/27/2018, at 8. The trial court emphasized that the evidence at trial established that both Mother and Father were likely to attend to Child's daily physical, emotional, and developmental needs, and claimed it was entitled to give great weight to Child's preference to spend equal time with Father and Mother due to her age and maturity level. *Id.*

Before making an award of custody, the Child Custody Act requires trial courts to consider all 16 factors set forth at 23 Pa.C.S. § 5328(a) to the extent the factors are relevant. *A.V. v. S.T.*, 87 A.3d 818, 823 (Pa. Super. 2014). "It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013). One of the factors a trial court must consider when making any award of custody is "[t]he well-reasoned preference of the child, based on the child's maturity and judgment." 23 Pa.C.S. § 5328(a)(7).

> The weight to be accorded a child's preference varies with the age, maturity and intelligence of that child, together with the reasons given for the preference. Moreover, as children grow older, more weight must be given to the preference of the child. As this Court has recently reaffirmed, where the households of both parents were equally suitable, a child's preference to live

with one parent could not but tip the evidentiary scale in favor of that parent.

**B.C.S. v. J.A.S.**, 994 A.2d 600, 604 (Pa. Super. 2010).

It has been said that an older teenage child is like an elephant – she sleeps wherever she wants. While the "Elephant Rule" is not incontrovertible, such as if a teenager's safety were at risk, or if the other factors strongly demonstrated that a teenager's preference was against her best interest, courts have to recognize the limitations of their power in determining where older teenagers must reside. This is not a case where a teenager adamantly refused to spend time with one of her parents, but rather, where the teenager requested the time to be equally allocated. Furthermore, the trial court found Child, who was 15 years old at the time,[16] to be mature and thoughtful in her desire to split her time equally between her parents. Trial Court Opinion, 8/27/2018, at 8.

Obviously it is impossible to know now if Child's preference would have been different had the trial court maintained the status quo until the custody trial. But as we discussed *supra*, we cannot unring that bell. We also recognize Father's concerns about Mother's conduct and rearing of Child. If we were the trial court hearing the evidence firsthand, perhaps we would have weighed the factors differently. But "[i]t is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we

_____

[16] Because litigation and the appellate process takes time, Child is now 16½ years old.

- 33 -

must consider whether, 'based on the evidence presented, given due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion in awarding custody to the prevailing party." ***King v. King***, 889 A.2d 630, 632 (Pa. Super. 2005). Child was already spending a significant amount of time in Mother's custody prior to the Interim Order. Under an abuse of discretion standard, we cannot conclude that the trial court was manifestly unreasonable by adding approximately four more days per month to Mother's custody time in light of a teenage child who preferred that the time be equal.

**Issue 7: Father's Petitions for Contempt**

Father's seventh issue asks us to decide whether the trial court abused its discretion or erred by failing to hold Mother in contempt for her noncompliance with existing court orders. ***See*** Father's Brief at 62-65.

> Our review of contempt orders is limited to determining whether the trial court abused its discretion. We have described judicial discretion regarding contempt orders as follows.
>
> > Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

***K.M.G. v. H.M.W.***, 171 A.3d 839, 844–45 (Pa. Super. 2017) (citations omitted).

In its Final Order, the trial court mentioned Father's contempt petitions, but did not address them specifically other than to state summarily that it was dismissing all pending motions and petitions. Final Order, 6/25/2018, at 23. In its Rule 1925(a) opinion, the trial court justified its dismissal by stating that it was not required to make a finding of contempt even where the record may have supported such a finding because the problems were resolved by the Final Order.[17] Trial Court Opinion, 8/27/2018, at 9.

In response, Father argues that not only did the trial court increase Mother's custody time despite her failure to abide by past custody orders, but such "expansion also increases the likelihood of future contempt by virtue of her having more time with [Child.]" Father's Brief at 63. Father notes that the trial court failed to explain its dismissal of his May 19, 2017 and April 24, 2018 contempt petitions in its Final Order. *Id.* Moreover, he contends that the Final Order does not "remedy the instances of contempt Father described in his contempt petitions, such as Mother's failure to facilitate telephone contact between [Child] and Father, her failure to follow the right of first refusal [provision], and her attempts to alienate [Child's] affections from Father[.]" *Id.* at 64.

_____

[17] The trial court quotes language purportedly from *Hill v. Hill*, 619 A.2d 1086 (Pa. Super. 1993) in support of this proposition. However, the quoted language does not appear in *Hill*.

In addition to citing **Hill**, the trial court relies upon **Flannery v. Iberti**, 763 A.2d 927 (Pa. Super. 2000). Trial Court Opinion, 8/25/2018, at 9. In that case, the trial court made a finding of contempt against the mother, who had used alcohol in front of the child, operated a motor vehicle with the child as a passenger, and failed to abide by certain communication requirements, all of which were in direct violation of prior orders. Nevertheless, the trial court declined to award sanctions. Instead, the trial court modified the custody order to award the father primary legal and physical custody and required all of the mother's visitation to occur near the father. This Court affirmed the trial court's action, noting that the trial court "prudently anticipated future noncompliance on [the mother's] part" and the "stringent" modification "obviated the need for finding [the mother] in contempt of the prior custody order, while adequately addressing [the father's] legitimate concerns for [the child's] safety going forward." **Id.** at 929-30.

We do not find this case to be akin to **Flannery**. The trial court implied that Mother did violate prior court orders in its opinion, but did not address any of the evidence offered by Father of Mother's behavior or rule on whether or not Mother engaged in the behavior of which Father accuses her. Other than re-stating some of the restrictions that were in place previously, the trial court failed to address Father's concerns. This is wholly

different than **Flannery**, where the court specifically changed the custody arrangement to minimize problems in the future.

We find this case to be more akin to **N.A.M. v. M.P.W.**, 168 A.3d 256 (Pa. Super. 2017). In that case, the record demonstrated that the mother flagrantly disobeyed court orders for ten years. The trial court held the mother in contempt, but refused to impose sanctions and admonished the mother instead. On appeal, we held that "[t]he trial court's refusal to impose sanctions not only permit[ed the mother] to disobey custody orders, but it reward[ed] her for doing so by allowing her to determine matters of custody without adverse consequences and without regard to [the father's] parental rights." **Id.** at 261-62. We concluded that, "in failing to impose any sanction, the trial court exercised its discretion without reason, which constitutes an abuse of discretion." **Id.**

As in **N.A.M.**, we conclude that by summarily denying Father's contempt petitions, the trial court exercised its discretion without reason. Therefore, we remand this case and direct the trial court on remand to rule specifically on Father's May 19, 2017 and April 24, 2018 contempt petitions. The court shall include a finding as to whether or not the evidence presented by Father at the April 27, 2018 hearing demonstrated contempt by Mother. If it did, the trial court must then determine an appropriate sanction, or devise a custody arrangement that is in Child's best interest but also

specifically minimizes each instance of contemptuous behavior in the future.[18]

**Issue 9: Nullification of Prior Orders**

In his ninth issue, Father argues that the trial court abused its discretion by using a generic form order that was not specific to the needs of the parties and Child in the Interim Order and Final Order. Father's Brief at 67-72. He argues that without explanation, the Interim Order and Final Order superseded all prior orders, including many orders that had very detailed provisions regarding custody of Child. *Id.* He points to his testimony at the hearing that described the problems the Interim Order created in the areas of busing, the holiday schedule, Child's activities, the parties' communications, and Child's cell phone communications. *Id.* at 71.

The trial court failed to offer any explanation for the summary revocation of prior orders in its Interim Order, its March 1, 2018 order denying Father's February 23, 2018 motion for special relief, and the Final Order. In the Rule 1925(a) opinion, the trial court simply adopted its reasoning set forth in its discussion of Father's first three issues. Trial Court Opinion, 8/25/2018, at 10. However, that discussion concerned the trial

---

[18] We note that modification of custody is allowed under these facts because the trial court was addressing both contempt and modification petitions. *Cf. P.H.D. v. R.R.D.*, 56 A.3d 702 (Pa. Super. 2012) (finding court violated father's due process rights by modifying custody order when only presented with a contempt petition). If the trial court only had a contempt petition before it, the court could only determine sanctions and not modification. *Id.*

court's justification of the Interim Order based upon its power to modify temporary custody arrangements pursuant to Rule 1915.13. As such, that reasoning is completely inapplicable to the trial court's summary revocation of all prior orders on an ongoing basis. We are forced to conclude that the trial court exercised its discretion without reason, which constitutes an abuse of discretion. Therefore, on remand, we direct the trial court to determine which of the prior orders should be reinstated to provide specific direction to the parties about the nuances of their arrangement and to minimize conflict between them in line with Child's best interest.

## Issue 10: Mother's Out-of-State Employment

Father's tenth and final issue questions whether the trial court abused its discretion or erred by denying Father's request to reopen the record to consider Father's after-trial discovery that Mother may have been employed out-of-state. *See* Father's Brief at 72. Specifically, Father contends that the trial court seemed to credit and acknowledge Father's concerns regarding Mother's out-of-town employment in Harrisburg, which left Child unattended during significant periods during Mother's custody. *Id.* at 74. Father maintains that after trial, but while the trial court's decision was still pending, he learned through Mother's bankruptcy matter that she had wages from the University of Maryland, suggesting that she was employed out of state. *Id.* According to Father, the trial court declined to rule on his petition for special relief during motions court, failed to address Mother's possible

out-of-state employment in the Final Order, and withheld its decision until after it issued the Final Order, where it denied Father's motion without explanation. *Id.* at 75.

Furthermore, Father disagrees with the trial court's characterization of the July 2, 2018 order ruling on his motion as interlocutory. *Id.* at 77-78. Father maintains that because the order wholly related to Mother's modification petition, which was still pending at the time Father presented the motion, the order cannot be considered interlocutory and should have been addressed at the time of the motion presentation or as part of the Final Order. *Id.*

In effect, Father's motion brought after-discovered evidence to the trial court's attention while the matter was still pending. The record suggests that the trial court ignored Father's motion until after it issued its Final Order, and then denied it summarily. Under these circumstances, we cannot agree that the order was an interlocutory order addressing an entirely separate matter. Furthermore, we once again conclude that the trial court ruled upon Father's motion without reason, thereby abusing its discretion by failing to exercise it. On remand, the trial court may receive evidence if necessary to determine whether Mother is still employed out of state. If it finds that she is, the trial court shall consider the impact upon the shared custody arrangement and whether the shared custody

arrangement serves the best interests of Child if Mother is unavailable for significant periods during her custody time, keeping in mind Child's age.

**Conclusion**

Based on the foregoing, we conclude that the trial court abused its discretion by modifying custody in the Interim Order prematurely and without sufficient explanation or justification as to why modification was in Child's best interest. Nevertheless, the relief that Father seeks to address this abuse of discretion is not in Child's best interest. Accordingly, we cannot disturb the Interim Order. We conclude that the trial court did not abuse its discretion by changing Father's physical custody from primary to shared in the Final Order. However, we remand to the trial court to (1) rule on Father's May 19, 2017 and April 24, 2018 contempt petitions as directed in this opinion; (2) determine which of the prior orders should be reinstated to provide specific direction to the parties about the nuances of their arrangement and to minimize conflict between them in line with Child's best interest; and (3) determine whether Mother is employed out of state, and if so, whether the out-of-state employment impacts the shared custody arrangement in the Final Order to the extent that it no longer serves Child's best interest.

Therefore, we affirm the August 31, 2017 Interim Order. We vacate the Trial Court's July 2, 2018 order denying Father's motion for special relief. We vacate the Final Order to the extent it denied Father's May 19, 2017 and

April 24, 2018 contempt petitions and supersedes all prior orders, but affirm it in all other respects. We remand to the trial court to conduct proceedings consistent with this opinion within 30 days.

August 31, 2017 order affirmed. June 25, 2018 order vacated in part and affirmed in part. July 2, 2018 order vacated. Remanded to conduct proceedings consistent with this opinion. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/6/2019