J-A09041-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| S.D.G., F/K/A S.D.D., F/K/A S.D.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| C.A.B. | : | |
| | : | |
| Appellant | : | No. 1148 WDA 2020 |

Appeal from the Order Dated September 28, 2020
In the Court of Common Pleas of Venango County Civil Division at No(s):
1003-2015

BEFORE:  STABILE, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED: MAY 13, 2021**

C.A.B. (Father) appeals from the order entered in the Court of Common Pleas of Venango County (trial court) awarding primary physical custody of the parties' minor daughter, P.R.B. (Child) to S.D.G. (Mother), subject to his periods of partial physical custody during school recesses.  We affirm.

**I.**

**A.**

Mother grew up in Venango County and has resided there for most of her life.  Father is from Cobb County, Georgia, but lived in Venango County for several years during his adolescence and high school years.  Mother and Father resided together in Venango County and Child was born in May 2014.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The couple married on February 13, 2015, and they immediately moved to Cobb County with Child. They resided with Father's grandmother, M.L. (Paternal Grandmother), in her large home.

In early August 2015, without informing Father of her intentions, Mother returned to Venango County with Child. On August 19, 2015, Mother filed divorce and custody actions in the county. Father filed a competing custody action in Cobb County, but the Georgia court refused to accept jurisdiction and concluded that venue and jurisdiction were proper in Venango County. Apparently, no appeal was taken from that order.

On June 3, 2016, the trial court entered an order awarding the parties joint legal custody of Child and approving Father's relocation to Georgia. Father was granted primary physical custody of Child, subject to Mother's periods of two consecutive months out of every five months, with each party exercising custody in their home state. After the order was entered, Mother lived at different residences with then-boyfriends and family members in and around Venango County.

On July 24, 2018, Mother filed a petition in Venango County seeking modification of the custody order. During the custody trial, Father raised the issue of jurisdiction and venue and on March 5, 2019, the case was transferred to Butler County, where Mother then resided and continues to reside. However, Butler County declined to accept transfer of the case, finding that Father failed to file the requisite preliminary objections challenging jurisdiction

and venue. The court also concluded that Butler County is not the home county of Child and that Child and Mother lacked significant contacts with the forum. The court stated that Venango County was the appropriate forum and transferred the case back to the county on August 5, 2019. No appeal was taken from that order.

When Mother received custody of Child in August 2019 pursuant to an arrangement she and Father had made before Child entered kindergarten, she filed emergency petitions in Venango County. Mother sought modification of the custody order and alleged Father failed to adequately communicate with her when Child was in his care and that his lax childcare caused Child to experience severe eczema outbreaks. The trial court heard oral argument on August 14, 2019, and entered an order directing that Mother retain custody of Child pending a hearing. After several scheduling issues, the trial court held a custody trial on September 14-15, 2020.

## B.

At trial, Mother testified that she married B.G. (Stepfather) in January 2020 and they live with their children in Butler County. Mother explained that she is a homemaker and is working towards a bachelor's degree in Criminal Justice. Stepfather is employed as a service technician at an automotive business. The couple began their relationship in 2016 and they have two daughters together, O.G. (born 9/17) and C.G. (born 6/19). Mother was pregnant with the couple's son at the time of the hearing.

Mother explained that she and Father followed the initial June 2016 custody schedule alternating consecutive months with Child until August 2019 when Father advised her of his intention to enroll Child in kindergarten at the same school she had attended pre-school. Mother then sought the emergency order and Child has resided with her continuously since that time.

Mother testified that Child has struggled with eczema since she was two years old and that this condition has resolved due to Mother's use of an effective product. Mother stated that she and Father "were never on the same page about [treatment]," and that Father's method was ineffective, leading to severe rashes on Child's legs, arm, neck and ear. (N.T. Trial, 9/14/20, at 24). Mother also contended that when Child was in Father's care, she had difficulty regularly communicating with Child and Father did not timely respond to her questions regarding school. Mother testified that she filed the emergency petition out of concern for Child "because she was broke out, her skin was like sandpaper, [Father's] form of communication absolutely is horrible, and I didn't know where she was. I didn't know where she was living. I didn't have a phone number for her [because] the two phone numbers that he gave me in this Skype log did not work." (*Id.* at 106). Mother acknowledged that Father did provide her with contact information, but asserted that he gave her three different home phone numbers in three months and that many of her phone calls went unanswered.

Mother advised that Child attended kindergarten in Butler County and that she did well academically, loved her teacher and made many friends. At the time of the hearing, Child had entered first grade as was doing similarly well. The family resides in a rural neighborhood in a home with a large yard where Child enjoys playing outside. Mother's parents live in Venango County and Mother testified that Child loves them and is excited to see them. Mother's sister and mother visit their home on a weekly basis.

Mother described Child and her two half-sisters as "best friends" and stated that they are inseparable. (*Id.* at 35). As to Child's relationship with Stepfather, Mother testified that it grew closer over time, that he provides for her, plays with her and "treats her as if she's his own." (*Id.* at 37). Mother and Stepfather are financially comfortable and able to support the children.

### C.

At the time of the hearing, Father had recently married S.B. (Stepmother) and they have a son together, C.A.B. II, who was born in May 2019. Father is a commercial truck driver and he typically works from 4:00 a.m. through 6:00 p.m., Monday through Friday. Father testified that he has primarily resided in Grandmother's home in Cobb County since February 2015, though he briefly lived at another residence for only a few months during the summer of 2019.

Father described his communication with Mother as "strained" and testified that he provided her with his home phone number. (*Id.* at 195).

Father stated that Mother has used the same Skype email address for five years to communicate with Child and he answered Mother's phone calls when he was at home. He did not answer her calls when he was at work, explaining that "I can't pick up my phone while operating an eighty thousand pound vehicle on a highway." (*Id.* at 201). Paternal Grandmother and Stepmother are Child's caretakers when he is on the road. Father has made Mother aware of his work schedule and has asked her to contact them directly if he is unable to take her call. Child generally returned any missed calls from Mother within one day and Mother's calls with Child were often lengthy, lasting for over one hour.

**D.**

On September 28, 2020, the trial court entered its order awarding Mother primary physical custody of Child, subject to Father's partial physical custody during school summer recess, every Christmas and New Year's holiday and school spring recess. Father timely appealed and he and the trial court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)(2)(i)-(ii).[1]

---

[1] When reviewing child custody orders,

> our scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses firsthand.

## II.

## A.

Father first contends that jurisdiction and venue are improper in Venango County. Father acknowledges that Venango County was an appropriate forum at the outset of the action, but contends that this is no longer the case because Mother does not reside in the county. Father asserts that Cobb County, Georgia, is instead the appropriate forum because that is where Child attended pre-school and has extended family and friends.[2]

The Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA)[3] governs issues of child custody jurisdiction arising between Pennsylvania and the other states of the United States. **See *J.S. v. R.S.S.***, 231 A.3d 942, 947 (Pa. Super. 2020). "The UCCJEA also governs questions of child custody venue arising between the counties of Pennsylvania[.]" ***Id.*** (citing 23 Pa.C.S.

_____

However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***M.J.N. v. J.K.***, 169 A.3d 108, 111–12 (Pa. Super. 2017) (citations omitted).

[2] A court's decision to exercise or decline jurisdiction is subject to an abuse of discretion standard of review. **See *B.A.B. v. J.J.B.***, 166 A.3d 395, 403 (Pa. Super. 2017).

[3] 23 Pa.C.S. §§ 5401-5482.

§ 5471). If a Pennsylvania trial court with jurisdiction enters an order awarding custody, the state will retain "exclusive, continuing jurisdiction" unless or until certain conditions occur. *See id.* at 948 (citing 23 Pa.C.S. § 5422).

Here, Father concedes that Venango County properly exercised jurisdiction when it made its initial custody determination regarding Child. Child was born in Venango County, both parties lived there at that time and Mother grew up in the county and has close familial ties to it.

As to whether Pennsylvania retained exclusive, continuing jurisdiction after Father exercised physical custody of Child in Georgia, the relevant section of the UCCJEA provides:

> [A] court of this Commonwealth which has made a child custody determination consistent with section 5421 (relating to initial child custody jurisdiction) . . . has **exclusive, continuing jurisdiction** over the determination until: (1) a court of this Commonwealth determines that **neither the child, nor the child and one parent**, nor the child and a person acting as a parent **have a significant connection with this Commonwealth and that substantial evidence is no longer available in this Commonwealth concerning the child's care, protection, training and personal relationships**[.]

23 Pa.C.S. § 5422(a)(1) (emphases added).

A review of the record reflects that both Mother and Child have significant connections with the Commonwealth and that substantial evidence concerning all aspects of Child's care are available in Pennsylvania. Moreover, the trial court in Georgia where Father resides has expressly declined to accept

the case and Child's ties to the Commonwealth have grown while she attended school and spent time with family and friends in this state.

Insofar as Father challenges venue between counties in Pennsylvania, Butler County has already declined to accept transfer of the case and it specifically found that Venango County, where Child was born, is the appropriate forum. Given that the Georgia court and the Butler County court have both declined to exercise jurisdiction, Father's challenges to jurisdiction and venue in the county in which this action was initiated nearly six years ago in 2015 merit no relief.

**B.**

Father next raises related claims challenging the delay in proceedings for an approximate one-year period from August 3, 2019, until the custody trial in mid-September 2020. Father points to the trial court's grant of multiple continuances, which he characterizes as *sua sponte*, and its consideration of Mother's emergency petition, which he claims was filed in bad faith. These actions resulted in Father not seeing Child for over one year, without adequate due process or consideration of Child's best interests.

We begin by observing that the primary concern in any custody case is the best interests of the child. In making a custody determination, a trial court must consider all factors that legitimately have an effect on the child's physical, intellectual, moral and spiritual well-being. ***See M.J.N.***, ***supra*** at 112.

Due process is required during custody proceedings and is a flexible concept, providing for such procedural safeguards as a particular situation warrants to ensure fundamental fairness to the parties. ***See E.B. v. D.B.***, 209 A.3d 451, 463 (Pa. Super. 2019). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." ***Id.*** (citation omitted).

This Court has recognized that an interim order, although only temporary, can have a long-term impact in custody cases because of its effect on the status quo. ***See id.*** at 466. This is because stability is typically in a child's best interest, and once an interim modification has been made on a temporary basis, courts are hesitant to change the child's routine again. ***See id.***

In this case, the trial court observed that Mother benefited from the one-year delay in the proceedings because it provided additional time for Child to bond with Mother, Stepfather and her half-sisters and to acclimate to school. However, the trial court found that both Father and Mother were responsible for any delay in the custody trial. The court noted that one of the continuances was granted at the request of Father's counsel because of a scheduling conflict. The court also observed that although Mother's filings were troubling in that Father did not violate the terms of the 2016 custody order, "it was further troubling to this Court that although Father had the ability to press for earlier resolution of the pending petitions, he did nothing, preferring instead

to allow Mother time to strengthen her bond with Child." (Memorandum Opinion and Order Court, 9/28/20, at 24). The court concluded:

> Regardless of the propriety or impropriety of either party's actions or inactions, the overriding relevant factor is and always will be the best interest of Child. Therefore, based upon the foregoing Findings, it is the conclusion that Child's best interest is and will be best served by maintaining the current custodial relationship with Mother having primary physical custody and with Father having partial physical custody for extended holidays and summer school recesses, provided nonetheless that the non-custodial parent will be permitted liberal periods of private personal communications with Child.

(**Id.**). Because the record supports the trial court's findings with regard to the delay in the proceedings, Father's claims do not merit relief.[4]

## C.

Finally, Father contends the trial court erred in failing to allow evidence relating to unidentified allegations of child abuse while Child was in Mother's care.[5] Father maintains that although the allegations pre-date the June 2016

---

[4] We note that Father's argument that the continuances violated Pennsylvania Rule of Civil Procedure 1915.4 also fails. This Rule provides for the prompt disposition of child custody cases and among its requirements is that a trial be scheduled within 180 days of the pertinent filing. **See** Pa.R.C.P. 1915.4(b). However, the Rule further provides that if the parties fail to comply with certain filing requirements, the trial court may "dismiss the matter unless the court finds that dismissal is not in the best interests of the child." **Id.** Instantly, the trial court acknowledged that it could have dismissed Mother's petitions based on procedural time limits but found that dismissal would not be in Child's best interests. (**See** Trial Ct. Op., at 12). We agree with its assessment and discern no abuse of discretion.

[5] The admission or exclusion of evidence is within the sound discretion of the trial court and we will reverse its ruling only upon a showing of an abuse of

custody order, the trial court was nonetheless required to hear testimony concerning this pertinent custody factor.[6]

One of the statutory factors a trial court must consider in making a custody determination is the "present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child." 23 Pa.C.S. § 5328(a)(2) (listing sixteen factors to consider when awarding custody).

At the beginning of trial, the trial court noted the comprehensive proceedings held in June 2016 and advised that it was not revisiting any events that occurred prior to entry of that order. The court, therefore, restricted the testimony to events after June 2016 and counsel for neither Mother nor Father objected. (*See* N.T. Trial, at 15). Although during Mother's testimony Father's counsel briefly made a vague reference to a CYS contact, he quickly indicated his agreement that the issue had already been decided. (*See id.* at 130).

Further, regarding the custody factor relating to instances of past abuse, the court specifically stated in its opinion that "there is no history of any abuse

_____

discretion or error of law. *See Jordan v. Jackson*, 876 A.2d 443, 454-55 (Pa. Super. 2005).

[6] It appears from the record that the allegations involved Mother's former boyfriend.

- 12 -

by either parent or any member of a parent's household, either physical or emotional." (Trial Ct. Op., at 21). Accordingly, the trial court did consider this factor and properly limited the evidence at trial to events occurring after entry of the 2016 order.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date:  5/13/2021