J-A20013-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ROBERT D. BARBUSH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ASHLEY E. BARBUSH | : | |
| | : | |
| | : | |
| | : | No. 297 MDA 2023 |
| v. | : | |
| | : | |
| | : | |
| BRIAN K. MEHAFFIE AND DEBRA R. | : | |
| MEHAFFIE | : | |
| | : | |
| Appellants | : | |

Appeal from the Order Entered January 18, 2023
In the Court of Common Pleas of Dauphin County
Civil Division at No(s): 2019-CV-3101-CU

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.:                    **FILED OCTOBER 20, 2023**

Brian K. Mehaffie ("Maternal Grandfather") and Debra R. Mehaffie ("Maternal Grandmother") (collectively, "Grandparents") appeal from the January 18, 2023 order awarding Ashley E. Barbush ("Mother") partial physical custody and shared legal custody of her daughter, L.B., born in July 2016, and two sons, J.B., born in April 2013 and B.B., born in December 2017 (collectively, the "Children"). After careful review, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

Robert D. Barbush ("Father") (collectively with Mother, "Parents") initiated the underlying custody action in April 2019, wherein he sought sole legal and primary physical custody of the Children. Three days later, Grandparents filed a petition to intervene requesting an emergency hearing and seeking shared legal custody and primary physical custody of the Children due to their concerns about Mother's mental health, Mother's treatment of the Children, and Grandparents' concerns about Mother's unstable housing. *See* Petition to Intervene, 4/29/19. Father supported Grandparents' bid for primary physical custody and asserted that he did not believe the Children were safe in Mother's custody. *See id*. at Exhibit "A".

Ultimately, the parties reached an agreement regarding custody which the court approved on July 8, 2019. The stipulated custody order awarded Grandparents sole legal custody of the Children while permitting Parents access to the Children's medical, dental, religious, and school records. *See* Order, 7/8/2019, at ¶ 1-2. The court also awarded Grandparents primary physical custody of the Children, while awarding Parents respective partial physical custody. *See id.* at ¶ 3-5. The order also specified that Parents would not exercise their custodial time together. *See* Order, 7/8/2019, at ¶ 6.

On September 30, 2019, the court entered another stipulated order that largely affirmed these custody awards. *See* Order, 9/30/2019, at ¶ 1-6. Specifically, Mother was awarded "supervised (by Grandparents) visitation with the [Children] at times, locations and under circumstances agreed to

between Mother and Grandparents." *Id.* at ¶ 5. On November 5, 2019, Mother filed a petition for modification of the September 30, 2019 order, seeking legal and primary physical custody of the Children. Following a custody conciliation, the parties came to an agreement and the court entered an order on January 8, 2020, which amended the September 30, 2019 order in a number of ways. Of particular note to the instant appeal, the order provided that future conciliations between the parties would not be scheduled until all the conditions in the January 8, 2020 order were met. These conditions included, *inter alia*, family counseling between Mother and Grandparents and completion of a parenting education program by Parents. *See id.* at ¶ 1-6.

Mother filed a petition to modify custody on April 13, 2022, seeking shared legal and physical custody of the Children. On June 10, 2022, Mother also filed a petition for contempt with respect to the September 30, 2019 order.[1] On June 23, 2022, a custody conciliation conference occurred, but the parties were unable to establish an agreement.

On October 4, 5, and 17, 2022, the trial court held a custody trial.[2] Mother, proceeding *pro se*, testified on her own behalf and presented the testimony of Teasha Bush, Father's sister-in-law; Chanel De Jager,

---

[1] At the time this appeal was filed, the trial court had not rendered a decision on Mother's petition for contempt.

[2] Although the trial occurred on three separate days, the notes of testimony are included in one transcript with consecutive page numbers.

- 3 -

Grandparents' former au pair for the Children; Marlena Tocco, the wife of Father's cousin; Janelle Reinhardt, Mother's friend; Lori McCall Forester, Mother's biological father's wife; and Nicole Therit, family-based therapist at Pennsylvania Counseling Services. During trial, Mother initially sought overnights with the Children on the weekends, as she believed some family members were willing to allow her to exercise her custodial time at their home. *See* N.T., 10/4/2022, at 9-10. However, as the trial progressed, Mother altered her request to unsupervised time with the Children and shared legal custody.[3] *See* N.T., 10/5/2022, at 388, 392.

Grandparents testified on their own behalf and also adduced the testimony of Alvin Rostolsky, the Children's maternal great grandfather; Dr. Nancy Patrick, Children's therapist of three years; Laura Burnell, Maternal Grandmother's sister; Richard Forester, Mother's biological father;[4] Larraine Mehaffie, Maternal Grandfather's sister-in-law; Melissa Collins, the mother of Mother's friend; and Claudia Lozano, another former au pair the Grandparents

---

[3] Grandparents identify Mother's physical custody award as "unsupervised visitation." In the subject order, the trial court also identifies Mother's custody award as "unsupervised visitation." This term is not proper pursuant to the Child Custody Act, which designates the following seven types of custody that a trial court may award if in the best interest of the child: shared physical custody; primary physical custody; partial physical custody; sole physical custody; supervised physical custody; shared legal custody; and sole legal custody. *See* 23 Pa.C.S.A. § 5323(a).

[4] Maternal Grandfather adopted Mother when she was approximately eleven years old. N.T., 10/4/2022, at 275-276.

- 4 -

utilized to care for the Children. Father was present, briefly testified, but did not produce any witnesses.[5]

The court also conducted an *in camera* interview of J.B. and L.B. without the parties or Grandparents' attorney present. The court did not speak with B.B., who was four years old at the time of the trial, due to his age. **See** Trial Court Opinion, 11/14/2022, at 16.

At the end of the hearing on October 17, 2023, the trial court closed the record and stated that careful consideration would be taken in determining what is best for the Children. However, before the court issued a decision, Grandparents filed a motion to add testimony and a motion for leave of court to take discovery on October 25, 2022. By order dated and entered November 14, 2022, the court denied Grandparents' motions.

In addition, by separate order dated and entered on November 14, 2022, the court awarded Mother and Grandparents shared legal custody of the Children. **See** Custody Order, 11/14/2022, at ¶ 1. Grandparents retained primary physical custody of the Children. **See id.** at ¶ 2. The trial court awarded Mother the following:

---

[5] Unlike Mother, Father did not file a petition to modify the September 30, 2019 custody order. Father attended the subject proceeding *pro se*. At the beginning of trial, he stated he did not want the order modified. **See** N.T., 10/4/2022, at 13. At the close of trial on October 17, 2023, Father requested additional custodial time with the Children. However, the trial court did not modify Father's award in its November 14, 2022 order following the hearing, and Father did not appeal.

3. Mother shall have visitation with the [C]hildren in accordance with the following schedule;

    A. At least one school night a week, Mother shall have unsupervised visitation with the [C]hildren from after school until 7:00 p.m.

        . . .

    B. Mother shall also have unsupervised visitation with the [C]hildren on a weekend day over lunchtime.

        . . .

    C. All of Mother's unsupervised visitation with the [C]hildren shall include only her and the three children. Mother is not permitted to bring any friends along to said visitation.

    D. Mother shall have visitation with the [C]hildren at [] Grandparents' house from dinnertime at approximately 5:00 p.m. until bedtime every Friday night. . . . During this visitation, [] Grandparents shall not interfere with Mother's custodial time.

*Id.* at ¶ 3.

On December 8, 2022, Grandparents filed a motion for reconsideration of the November 14, 2022 orders.[6]  Specifically, with respect to the custody

_____

[6] In addition, Grandparents timely filed a notice of appeal from the November 14, 2022 orders, which this Court docketed at 1685 MDA 2022. On January 10, 2023, this Court issued a rule to show cause order as it was unclear if the November 14, 2022 orders were final or otherwise appealable. *See* Pa.R.A.P. 341(b)(1) (a final order is any order that disposes of all claims and of all parties); *see also G.B. v. M.M.B.*, 670 A.2d 714 (Pa. Super. 1996) (a custody order is final and appealable after the trial court has concluded its hearings on the matter and the resultant order resolves the pending custody claims between the parties). On February 3, 2023, following a response from Grandparents, this Court quashed the appeal because the November 14, 2022 orders were not final or otherwise appealable.

order, Grandparents requested additional provisions be included to address specific circumstances that were contained in the record. On December 22, 2022, the trial court directed Parents to provide responses to the proposed changes by Grandparents. On January 17, 2023, upon consideration of Grandparents' motion for reconsideration, and the responses by Parents, the trial court amended the November 14, 2022 custody order by adding and clarifying provisions, none of which altered Mother's partial physical custody award. In all other respects, the November 14, 2022 custody order remained in full force and effect.

On January 18, 2023, Grandparents again filed a motion for reconsideration, this time of the January 17, 2023 order, and requested clarification of said order. Accordingly, by order dated and entered on January 18, 2023, the court modified the January 17, 2023 order, with respect to Grandparents' prepaid vacation with the older two children, and provided that the January 17, 2023 order otherwise remained in full force and effect.[7]

On February 17, 2023, Grandparents filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On March 9, 2023, the trial court submitted a short opinion pursuant to Pa.R.A.P. 1925(a) stating that Grandparents' concise

_____

[7] As the January 18, 2023 order fully disposes of all issues presented during the custody hearings, we find the order to be a final or otherwise appealable custody order. **See** Pa.R.A.P. 341(b)(1); **see also G.B.**, 670 A.2d at 714.

statement is in violation of Pa.R.A.P. 1925(b)(4)(ii) as they set forth lengthy explanations for each alleged error. The court further stated that it would be relying upon the reasoning provided in its opinion accompanying the November 14, 2022 order.

Grandparents present the following issues for review:

1. Whether the trial court erred as a matter of law and abused its discretion in entering the custody order dated November 14, 2022 inasmuch as the trial court's decision is against the weight of the uncontroverted testimony presented at trial[?]

2. Whether the trial court erred as a matter of law and abused its discretion with its decision as Mother failed in her burden of proving that the trial court's 2019 order, which limited Mother's periods of visitation to non-overnight supervised visitation, should be modified to unsupervised time in light of the overwhelming evidence that established that affording Mother unsupervised time was not in the [C]hildren's best interests and subjects them to ongoing risk of harm[?]

3. Whether the trial court erred as a matter of law and abused its discretion in denying [Grandparents'] Motion to Add Testimony and Motion for Leave of Court to Take Discovery by Order dated November 14, 2022[?]

4. Whether the trial court erred as a matter of law and abused its discretion in interviewing two (2) of the children, where the children's preference were irrelevant to determining whether affording Mother unsupervised partial physical custody subjected the [C]hildren to ongoing risk of harm[?]

5. Whether the trial court erred as a matter of law and abused its discretion in admitting/considering Mother's packet of text messages, Facebook messages and writing that were not authenticated or relevant to the issues of expanding Mother's supervised time to unsupervised time or considering her request for shared legal custody[?]

Grandparents' Brief at 4-5 (issues reordered for ease of disposition; suggested answers omitted).

We will begin by addressing the trial court's contention that Grandparents waived their arguments on appeal due to their prolix Rule 1925(b) statement. Grandparents' concise statement is voluminous and repetitive. Our Supreme Court has explained that raising a staggering number of issues is not effective appellate advocacy and is "borderline abuse of the legal system." ***Commonwealth v. Robinson***, 864 A.2d 460, 480 n.28 (Pa. 2004). The Court stated that, "multiplying assignments of error will dilute and weaken a good case and will not save a bad one." ***Id.*** (emphasis omitted and citation omitted).

Here, we observe that Grandparents' Rule 1925(b) Statement is ten pages and consists of numerous headings, subheadings, and sub-subheadings. The statement is voluminous and repetitive. The crux of Grandparents' arguments appear to be regarding the Section 5328(a) custody factors. While not clear and concise, we are able to discern Grandparents' purported allegations of error. However, we remind counsel that a Rule 1925(b) Statement "must be concise and coherent as to permit the trial court to understand the specific issues being raised on appeal." ***Tucker v. R.M. Tours***, 939 A.2d 343, 346 (Pa. Super. 2007) (internal quotation marks omitted).

Grandparents' first and second claims challenge the trial court's findings regarding the Children's best interests and the trial court's examination of the Section 5328(a) custody factors.

Our standard of review of these claims is deferential:

> Our standard of review over a custody order is for a gross abuse of discretion. Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record.

> In reviewing a custody order, we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Rogowski v. Kirven*, 291 A.3d 50, 60-61 (Pa. Super. 2023) (internal citations, brackets, and quotation marks omitted).

As with all custody-related matters, this Court's "paramount concern is the best interest of the child involved." *Id*. at 61 (internal citation, brackets, and quotation marks omitted). Indeed, Pennsylvania law provides that the trial court is only empowered to change an existing custody order if the modification will "serve the best interest of the child." 23 Pa.C.S.A. § 5338(a). To that end, the Child Custody Act sets forth sixteen factors at 23 Pa.C.S.A. §

5328(a) that a court must consider prior to modifying an existing custody order. *See E.B. v. D.B.*, 209 A.3d 451, 460 (Pa. Super. 2019). While a court's consideration of these factors is mandatory, "[i]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *Id*. (citation omitted). Furthermore, trial courts are required to consider "[a]ll of the factors listed in section 5328(a) . . . when entering a custody order." *J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis and citation omitted).

In order to evidence its consideration of these required elements, a trial court must set forth a discussion of these best-interest factors "prior to the deadline by which a litigant must file a notice of appeal." *A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014). However, the trial court's discussion is not required to explicitly address each factor:

> In expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations. A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d).

*Id.* at 822-823 (citations and internal quotation marks omitted).

Instantly, the court weighed the following custody factors in favor of Mother: Section 5328(a)(1), (2), (4), (7), (9), (10), (13), and (14). *See* Trial Court Opinion, 11/14/2022, at 11-23. The court weighed (3) and (12) in Grandparents' favor. *See id.* The court further determined that (5) and (15) weighed neutrally between the parties, and found (6), (8), (11), and (16)

- 11 -

inapplicable. ***See id.*** The court emphasized that the evidence proffered weighs in favor of Grandparents retaining primary physical custody, but Mother no longer required supervised custody periods. ***See id.***

At their core, we interpret Grandparents' first two issues as a dispute to the trial court's findings of fact and determinations regarding credibility and weight of the evidence. Grandparents' Brief at 17-24 ("The trial court erred and abused its discretion by improperly weighing the custody factors;" "Mother failed in her burden of proving that the trial court's 2019 [o]rder should be modified to unsupervised time."). Grandparents, in essence, question the trial court's conclusions and assessments and asks this Court to re-find facts, re-weigh evidence, and/or re-assess credibility to his view of the evidence. This we cannot do.

We cannot disturb the trial court's findings of fact and determinations regarding credibility and weight of the evidence absent an abuse of discretion. ***See Rogowski***, 291 A.3d at 60-61. "It is not our function to determine whether the trial court reached the 'right' conclusion . . . . Rather, we consider whether, based on the evidence presented and giving due deference to the trial court's weight and credibility determinations, the trial court erred or abused its discretion. . . ." ***Hanson v. Hanson***, 878 A.2d 127, 129 (Pa. Super. 2005).

Grandparents have challenged the trial court's findings with respect to factors (1), (2), (5), (7), (13), (14), (15), and (16), which we will address in sequence.

Factor (1) requires consideration of which party is more likely to encourage and permit frequent and continuing contact between the Children and other interested parties. *See* 23 Pa.C.S.A. § 5328(a)(1). Here, the trial court found that this factor favored Mother and stressed that, under the prior custody arrangement, Grandparents had "sole discretion as to when, where and how Mother may have contact with the Children, including visitation time and whether said visitation is supervised or unsupervised."  Trial Court Opinion, 11/14/2022, at 11.

On this point, Mother testified that Grandparents withheld the Children, except for some limited video calls, from September 2021 to February 2022. *See* N.T., 10/4/2022, at 82-83. The trial court concluded that "we did not hear any testimony that justified [Grandparents'] decision to withhold all visitation. . . ." Trial Court Opinion, 11/14/2022, at 12. Rather, Maternal Grandmother testified that the decision to prevent the Children from seeing Mother was for Grandparents' own benefit:

> Q: If you're there, supervising, during the time period of fall of '21 through February of '22, why did you cut that off?
>
> A: Because she makes it very miserable in our home. This is my home, and we are grandparents who are mere volunteers. And we are doing everything for these [C]hildren.

We don't get a dime of child support; we never asked for it. We're doing everything. And I'm not gonna have [Mother] come in my home and disrespect me, undermine me, and undo everything that we're doing for these [C]hildren, which she does on a regular basis.

*Id.* at 462. Furthermore, the Children's therapist, Dr. Nancy Patrick, testified on direct examination that L.B.'s behavior deteriorated during this time period. *See* N.T., 10/4/2022, at 197-198. Accordingly, we find that the record supports the trial court's finding that Section 5328(a)(1) favors a set schedule that does not provide Grandparents with unfettered discretion as to how, when, and where Mother can exercise custodial time with the Children.

Factor (2) requires consideration of the present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party, and which party can better provide adequate physical safeguards and supervision of the child. *See* 23 Pa.C.S.A. § 5328(a)(2). Grandparents argue that evidence "could have been offered" that Mother's behaviors put the Children at risk of harm. The trial court determined that this factor favored Mother because there was no evidence that she posed a current risk to the Children and the court included a provision in the custody order that Mother's custodial time shall only include the Children. Trial Court Opinion, 11/14/2022, at 13.

As discussed more fully below, Grandparents' argument that the trial court erred in denying their motions to add testimony and take discovery is waived for failure to provide a discussion with citation to the relevant law and

develop the issues in a manner allowing for meaningful review. *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011). Further, we discern no error by the trial court as the record supports the court's finding that no evidence was presented that Mother posed a continued risk of harm to the Children.

Factor (5) requires consideration of the availability of extended family. *See* 23 Pa.C.S.A. § 5328(a)(5). Grandparents argue that the trial court erred in determining this factor is neutral because Grandparents provided evidence of available extended family. *See* Grandparents' Brief at 20. They further argue that none of the extended family are willing to permit Mother to have visitation in their homes. *See id.*

We reiterate that "[i]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *E.B.*, 209 A.3d at 460 (citation omitted). In its opinion, the trial court found that the evidence at trial was not as definitive as Grandparents believed:

> There are numerous family members who are involved in this case and testified at the trial. All of these family members have provided care for the Children at times and likely will in the future. It is possible that Mother may be able to exercise overnights with the Children at the home of one of these family members, but it does not appear that any of the family members will agree to a specific schedule of overnights. This factor does not weigh in favor of any party.

Trial Court Opinion, 11/14/2022, at 15. It is clear from its opinion that the trial court did not find Section 5328(a)(5) salient to the case. Further, in contrast to Grandparents, who indicated that none of the extended family are willing to permit Mother custodial time at their homes, we note that Larraine

- 15 -

Mehaffie testified Mother could exercise some custody at her home, but she could not commit to a regular schedule. **See** N.T., 10/4/2022, at 296-297. Therefore, we find the record supports the trial court's determination.

Factor (7) requires the court to consider the well-reasoned preference of the child, based on the child's maturity and judgment. **See** 23 Pa.C.S.A. § 5328(a)(7). Grandparents argue that the J.B.'s and L.B.'s testimony was not relevant, and that the court was required to focus on whether unsupervised time with Mother was in the Children's best interest. Notably, Grandparents do not assert that the Children were too immature or incapable of expressing their well-reasoned opinion. Our case law provides that trial courts are required to consider "[a]ll of the factors listed in section 5328(a) . . . when entering a custody order." **J.R.M.**, 33 A.3d at 652 (emphasis omitted). Therefore, as the trial court was required to consider the Children's well-reasoned preferences, Grandparents' argument is without merit.

Grandparents further argue that the trial court erred regarding Section 5328(a)(13). Factor (13) concerns the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. **See** 23 Pa.C.S.A. § 5328(a)(13). Grandparents claim that Mother's testimony was not credible, but do not specify what portion of Mother's testimony they are referencing. **See** Grandparents' Brief at 20. They further contend that there was no evidence that Grandparents are harming the Children. **See id.** Finally, Grandparents allege that the trial court ignored evidence that the

Children "completely change" with Mother, that she is not capable of managing the Children, and this puts them at risk. *See id.* at 20-21.

We again emphasize that "we must defer to the trial court who viewed and assessed the witnesses first-hand." *Rogowski*, 291 A.3d at 60 (citation and brackets omitted). Further, we note that the trial court heard three days of testimony and was well within its discretion to make credibility determinations.

More importantly, our review of the trial court's discussion of factor (13) does not reveal any specific finding that Grandparents are harming the Children. Rather, the trial court's discussion focused on Grandparents' actions with regard to Mother and their inability to allow Mother to parent during her custodial time by micromanaging her. *See* Trial Court Opinion, 11/14/2022, at 18-22. We find that the record supports the court's findings.

Grandparents often had issues with Mother when she attempted to care for the Children. On one occasion, while Mother was driving L.B. from her dance class to the pool, she stopped at Turkey Hill to get some snacks for L.B. N.T., 10/17/2022, at 617-618. Grandparents did not approve of this stop and provided this event as an example of Mother lying. *Id.* at 618. Further, Grandparents described Mother's parenting style as "chaos." *Id.* at 597.

When questioned by the court, Maternal Grandfather testified that he needs to be present for Mother's custodial time to help her manage the Children:

Q: Have you ever considered you and [Maternal Grandmother] leaving your house when [Mother is] there with the [Children]?

A: No.

Q: Why not?

A: It's my house.

Q: I understand.

A: I need to be there in case something needs to be done.

Q: What do you mean, needs to be done?

A: Like, if she can't manage the [Children]. I want to be there to help make sure the [Children] are safe and not running around obnoxiously. I mean, I pull back and try to let her do it. It's not like I'm visible all the time. I will be, you know, in the living room or go out to the garage or go upstairs or trying to leave where she's by herself, and it's -- it doesn't go well.

Q: Any other concerns? With respect to leaving her alone with the [Children] in the house?

A: I don't -- I don't know about concerns. I don't want to leave my own home. I just got off work, so . . . .

*Id.* at 625-626. In contrast, Lozano, Grandparents' former au pair, testified that what Grandparents described as "chaos," was better described as the Children being excited to see Mother:

Q: When [Mother] came to the house to be with the [Children], did you have an opportunity to observe the style of parenting, the way she parented the [Children]?

A: Yeah. Some of the times, yeah, I did.

Q: And how would you describe that?

A: Well, I think it was -- I mean, she was trying to get involved with them, but they were, like, too excited to see her. So I think

- 18 -

that they were not listening to her, and she was trying to get them to listen to her. But it was very hard.

Q: They were excited to see her?

A: Yes, I'm sorry.

Q: How would you -- did you see a difference in the [C]hildren's behavior when [Mother] was not there versus when [Mother] was there?

A: Yes. Because when they were with [Grandparents] or with me, yeah. They were, like, listening better or they were doing what they were supposed to do.

But sometimes, when [Mother] was there, they were like too excited to be with her that they were all three of them fighting over playing with her or getting her attention. So it was different, because they were not, like, behaving as they usually did with us.

N.T., 10/5/2022, at 540-541. The record supports the trial court's finding that Grandparents' supervision of Mother's custodial times have led to conflict between the parties. Accordingly, we can determine no error in the trial court's conclusion that this factor favored providing with Mother unsupervised custodial times with the Children.

Pursuant to factor (14), the court was required to consider, the history of drug or alcohol abuse of a party or member of a party's household. *See* 23 Pa.C.S.A. § 5328(a)(14). Grandparents argue that the trial court failed to consider evidence that Mother is involved in drug trafficking and her associations with people who abuse alcohol and drugs. *See* Grandparents' Brief at 21, 23. Here, the trial court determined that "there was no indication that [Mother] ever abused alcohol or drugs while the Children were in her

custody." Trial Court Opinion, 11/14/2022, at 22. Further, since Mother only requested unsupervised time with the Children, the court fashioned its analysis on "whether Mother is a danger to the Children during short periods of visitation." *Id.* at 23.

We begin by noting that Grandparents' allegations of drug dealing was hotly contested by Mother. Despite Grandparents' allegations, Mother denied having ever sold drugs. *See* N.T., 10/4/2022, at 138-139. And, as the trial court found, there is nothing in the record to suggest that Mother abuses alcohol or drugs when she is with the Children. Similarly, Grandparents cite to no evidence of record to refute the trial court's conclusion that there was no evidence presented that Mother brings the Children around anyone under the influence of drugs or alcohol during her custodial times. Therefore, we discern no error by the trial court.

In addressing Section 5328(a)(15), the mental and physical condition of a party or member of a party's household, Grandparents argue that the trial court ignored testimony from the May 1, 2019 emergency hearing that "proved Mother's mental health issues." Grandparents' Brief at 21, 23-24. According to Grandparents, Mother's mental health issues prevent her from making good choices. *See id.* at 23. Grandparents also argued, again, that Mother lacked credibility as she lied about where she lived and regarding her continued involvement with her abusive ex-paramour. *Id.*

We find Grandparents' argument concerning alleged testimony from the May 1, 2019 emergency hearing waived. As related previously, Grandparents did not provide any citation to the record pursuant to Pa.R.A.P. 2119(d). Further, Grandparents' argument regarding Mother's credibility is without merit as "we must defer to the trial court who viewed and assessed the witnesses first-hand." **Rogowski**, 291 A.3d at 60 (citation and brackets omitted).

Grandparents focus on testimony from Burnell, Maternal Grandmother's sister, who stated that Mother "struggles with her mental health." N.T., 10/4/2022, at 214. However, Burnell was not presented as an expert witness and the trial court was well within its discretion to discount this testimony, especially considering Mother presented successful discharge documentation from her individual therapist. Accordingly, we discern no error in the trial court's determination that Section 5328(a)(15) did not favor either party.

Finally, factor (16) required the court to consider any other relevant factor. **See** 23 Pa.C.S.A. § 5328(a)(15). Grandparents contend that there is evidence suggesting that there are ongoing safety concerns with Mother's associates. **See** Grandparents' Brief at 21. Grandparents further argue that the trial court failed to hold Mother accountable and that the court improperly blames Grandparents who are merely attempting to do what is best for the Children. **See id.** at 21-23. Overall, they argue that the court should have

afforded Grandparents the option to select a different location for Mother's Friday evening visits. ***See id.***

Here, the trial court stated that its most salient concern is whether Mother "can visit with the Children without having to be supervised." Trial Court Opinion, 11/14/2022, at 24. The court concluded that "[t]here was no evidence that Mother has ever put the Children in danger during her supervised visits. There is also no evidence that the Children were ever in danger during the times that Mother had unsupervised time with them." ***Id.***

Once again, "[i]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." ***E.B.***, 209 A.3d at 460 (citation omitted). The court focused on the safety of the Children, and utilizing the certified record, determined it did not have any safety concerns in merely providing Mother with unsupervised custodial time with the Children. Therefore, we find no error in the trial court's analysis of Section 5328(a)(16).

The trial court analyzed and addressed each of the custody factors pursuant to Section 5328(a). ***See*** Trial Court Opinion, 11/14/2022, at 11-24. After careful review of the record, we determine that the trial court's findings and determinations regarding the custody factors set forth in Section 5328(a) are supported by competent evidence in the record, and we will not disturb them. ***See Rogowski***, 291 A.3d at 60-61.

Finally, we conclude that Grandparents' third, fourth, and fifth issues are waived for failure to develop any meaningful argument. To begin, we note that their argument on issue three covers the better part of two pages, their arguments on issues four and five combined cover only a single page. Within these three arguments, Grandparents make numerous factual assertions, but wholly fail to cite the certified record. They further fail to provide a discussion with citation to the relevant law and develop the issues in a manner allowing for meaningful review. **W.H.**, 25 A.3d at 339 n.3 (quoting **In re A.C.**, 991 A.2d 884, 897 (Pa. Super. 2010)) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); **see also In re M.Z.T.M.W.**, 163 A.3d 462, 465-66 (Pa. Super. 2017). We, therefore, find these issues waived.

Even if these issues were not waived, each fail separately on the merits. In their third issue, Grandparents argue that the court failed to consider the Children's safety and that the proffered evidence in their motions to add testimony and to take discovery would show that Mother continues to associate with her ex-paramour, B.D. **See** Grandparents' Brief at 15-17. Our Supreme Court has stated that "the decision of whether to admit or exclude evidence is within the sound discretion of the orphans' court. A reviewing court will not disturb these rulings absent an abuse of discretion. Discretion is

abused if, *inter alia*, the orphans' court overrides or misapplies the law." ***In re A.J.R.-H.***, 188 A.3d 1157, 1166–67 (Pa. 2018) (internal citations omitted).

In denying Grandparents' motions by order dated November 14, 2022, the trial court determined that the additional testimony and discovery were not relevant as the custody order stated Mother's custodial time would only be "her and the [Children]." Custody Order, 11/14/2022, at 4 (unpaginated). The custody order also contained a separate provision that stated, "The [C]hildren are to have no contact whatsoever with [B.D.]." ***Id.*** at 5 (unpaginated) (emphasis omitted). Additionally, Grandparents sought to add testimony from De Jager, another former au pair, whom they disparaged during the trial and had testified already on October 4, 2022. Accordingly, it was within the trial court's purview to deny Grandparents' post-trial motions, and we discern no abuse of discretion.

In their fourth issue, Grandparents argue that the trial court erred in interviewing two of the children, J.B. and L.B., because their preferences were irrelevant in determining whether awarding Mother unsupervised partial physical custody posed a risk of harm to the Children. ***See*** Grandparents' Brief at 25. Primarily, our case law provides that trial courts are required to consider "[a]ll of the factors listed in section 5328(a) . . . when entering a custody order." ***J.R.M.***, 33 A.3d at 652 (emphasis and citation omitted). Additionally, "[t]he court may interview a child in open court or in chamber." Pa.R.Civ.P.

1915.11. Therefore, the court's decision to interview the two older children does not amount to error and Grandparents' argument fails.

In their final issue, Grandparents baldly assert that the trial court erred in admitting Mother's packet of text messages, Facebook messages, and writings that were not authenticated or relevant. **See** Grandparents' Brief at 25. As related previously, "the decision of whether to admit or exclude evidence is within the sound discretion of the orphans' court." **A.J.R.-H.**, 188 A.3d at 1166–67 (citation omitted). Further, it appears that the court did not admit the exhibits Grandparents are referring to because they do not appear in the certified record.[8]  As we discern no error, Grandparents' contention fails.

Based on the testimony, and our review of the certified record, we conclude that the court reasonably weighed the Section 5328(a) factors. As we find Grandparents' other issues waived, or otherwise without merit, we conclude that the trial court's consideration of the best interest of the Children was careful and thorough, and we discern no abuse of discretion. Accordingly, we affirm the order.

Order affirmed.

_____

[8] At the close of trial on October 17, 2022, the trial court stated that, regarding the exhibits Grandparents objected to, only those parts of the exhibits that were specifically testified to would be admitted. **See** N.T., 10/17/2022, at 673-674. Grandparents' counsel at the time indicated that this was acceptable. **See id.**

Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 10/20/2023