J-S04043-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| PANAGIOTA EMMANOUILIDOU | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| IOANNIS KYZIRIDIS | : | |
| | : | |
| Appellant | : | No. 2564 EDA 2023 |

Appeal from the Order Entered September 21, 2023
In the Court of Common Pleas of Northampton County Civil Division at
No(s):  C-48-CV-2020-05403

BEFORE:    BOWES, J., STABILE, J., and LANE, J.

MEMORANDUM BY LANE, J.:                          **FILED APRIL 17, 2024**

Ioannis Kyziridis ("Father")[1] appeals from the custody order involving the parties' minor children: K.K., born in September 2012; T.K., born in May 2015; and A.K., born in August 2016 (collectively, "the Children").  The order: (1) denied Father's petition for primary physical custody; (2) maintained the current shared physical custody arrangement between Father and Panagiota Emmanouilidou ("Mother") (collectively, the "Parents"); and (3) found

_____

[1] The parties' names are "stated in the caption as they appeared on the record of the trial court at the time the appeal was taken," pursuant to Pa.R.A.P. 904(b).  In an appeal of a custody action where the trial court has used the parties' full name in the caption, "upon application of a party and for cause shown, an appellate court may exercise its discretion to use the initials of the parties . . . based upon the sensitive nature of the facts included in the case record and the best interest of the child."  Pa. R.A.P. 904(b)(2).  Neither party has applied to this Court for the use of initials in the caption.  Nevertheless, we will refer to the minor Children, as well as family members involved in this matter, by their initials.

Mother's move to her fiancé's home in New Jersey, approximately thirty-eight miles from Father's home, was not a "relocation" within the meaning of the Child Custody Act.[2]  We affirm.[3]

Parents married in 2009, and thereafter lived in Bethlehem, Pennsylvania.  During the marriage, Father co-owned and worked in a restaurant, while Mother did not work and was the Children's primary caregiver.  The parties separated in August 2020, following a physical altercation and Mother's obtaining a temporary protection from abuse ("PFA") order against Father.[4]  We note that at this time, K.K. was almost eight years old, T.K. was five, and A.K. was four.  Mother moved to an apartment in Freemansburg, approximately two miles from Father's residence in

---

[2] **See** 23 Pa.C.S.A. §§ 5321-5340.

[3] In the trial court proceedings, Mother was represented by counsel, Melissa Rudas, Esquire.  On the same day that Father served his Pa.R.A.P. 1925(a)(2) statement of errors complained of on appeal, Mother filed a one-page *pro se* "Entry of Appearance of Self-Represented Party Pursuant to Pa.R.C.P. No. 1930.8."  The middle portion of this filing purported to "Remove [Attorney] Rudas as my attorney of record" **and** "Withdraw my appearance for the filing party," and it appears to be signed by Attorney Rudas.  Mother's Entry of Appearance of Self-Represented Party Pursuant to Pa.R.C.P. No. 1930.8., 10/18/23. Meanwhile, the bottom portion of the filing provided Mother's home address as the address where pleadings may be served.  However, Attorney Rudas remains attorney of record on this Court's docket sheet.  Mother has separately submitted two *pro se* briefs to this Court, which were not accepted for filing, but forwarded to Attorney Rudas pursuant to **Commonwealth v. Jette**, 23 A.3d 1032 (Pa. 2011).  Attorney Rudas has not responded.

[4] A final PFA order was entered on November 5, 2021, "by agreement of the parties and without admission of liability."  Trial Court Opinion, 9/21/23, at 7.

Bethlehem. Over the next two years and five months, until the entry of the parties' marital settlement agreement, the Children lived primarily with Mother. Father's mother, I.M. ("Paternal Grandmother"), relocated from Greece and lived with Father to help care for the Children when they stayed with him.

Mother filed a divorce complaint, seeking, *inter alia*, primary physical custody of the Children. In November 2020, the trial court entered an interim order awarding Mother primary physical custody and Father partial physical custody on alternating weekends. Under this order and all subsequent custody orders, Parents have shared legal custody of the Children. Subsequently, Father filed several petitions to modify custody, which did not result in any material change to the custody arrangement.

On February 16, 2023, Parents executed a marital settlement agreement. The parties agreed to share physical custody of the Children on a fifty-fifty basis on a "week-on, week-off schedule." Marital Settlement Agreement, 2/16/23, at 13. Although the agreement "anticipated" the custody schedule would be "memorialized in a separate [c]ustody [s]tipulation," no such stipulation was filed by the parties. **See id**. Nevertheless, Parents have been sharing equal physical custody on a bi-weekly schedule. **See** N.T., 9/12/23, at 200-02. Additionally, Parents provide transportation to and from the Children's schools on an approximately equal basis.

Parents' divorce was finalized on April 17, 2023. Contemporaneously, Mother informed Father of her intention to move to the home of her fiancé, M.T. ("Fiancé"), in Califon, New Jersey, approximately thirty-eight miles and a forty-five minute drive from her home in Freemansburg. *See* Trial Court Opinion, 9/21/23, at 12.

On May 15, 2023, Father filed the underlying petition to modify custody. He asserted that Mother's move to New Jersey would be a "relocation" within the meaning of the Child Custody Act, and the relocation would subject the Children to increased commuting time to school during Mother's periods of custody. Father requested the trial court to enjoin Mother from moving the Children to New Jersey and to award him primary physical custody. Shortly thereafter, Mother moved to Califon, New Jersey and began cohabiting with Fiancé. She exercised her periods of physical custody at this home, while the Children continued to attend their Bethlehem-area schools. We note that until spring 2023, the Children were enrolled at the same elementary school. K.K. then advanced to a middle school in fall 2023.

On June 27, 2023, Father filed an objection to Mother's purported "relocation." This filing largely reiterated the arguments of his petition to modify custody, and further asserted that Mother failed to provide notice of her relocation as required by Pa.R.C.P. 1915.17(a) (stating "[a] party proposing to change the residence of a child which significantly impairs the ability of a non-relocating party to exercise custodial rights must notify every

other person who has custodial rights . . . and provide a counter-affidavit by which a person may agree or object").

Sometime in August 2023, K.K., who was almost eleven years old, began residing full-time with Father, due to anxiety about being late to school if traveling from Mother's residence. T.K., then eight years old, and A.K., seven years old, continued to split their time equally between Parents' homes.

The trial court conducted a two day hearing, beginning September 11, 2023. On the first day, the trial court interviewed the Children *in camera*. Following this hearing, K.K. returned to Mother's physical custody according to the fifty-fifty schedule. On the second day, Parents and Paternal Grandmother testified.[5] Pertinent to Father's claims on appeal, we note that Father sought to call the Children's school counselor to testify as a fact witness, specifically as to what the Children disclosed during therapy. However, the trial court sustained Mother's objections on the grounds that the testimony would be both privileged and impermissible hearsay. Additionally, we note that neither party called Fiancé to testify.

On September 21, 2023, the trial court entered the underlying custody order. First, the trial court found Mother's move to New Jersey was not a "relocation" under the Child Custody Act, and thus found the statutory relocation factors, at Section 5337(h), were not applicable. However, the

---

[5] Mother and Paternal Grandmother testified with the assistance of Greek-speaking translators.

court reviewed the factors for custody at Section 5328(a). Pertinently, the trial court found: three factors were in Mother's favor; two factors were in Father's favor; and seven factors were equally weighted. The trial court denied Father's request for primary physical custody, and formally memorialized the parties' fifty-fifty shared physical custody schedule.

Father filed a timely notice of appeal, and subsequently a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).[6]

Father raises the following issues for our consideration:

a. Whether the trial court erred when it improperly determined that this matter did not involve a relocation under 23 Pa.C.S.A. § 5337.

_____

[6] Rule 1925(a)(2)(i) provides that in children's fast track appeals, the concise statement "shall be filed and served with the notice of appeal." Pa.R.A.P. 1925(a)(2)(i). Here, Father filed a notice of appeal on October 5, 2023, and a Rule 1925(a)(2) statement on October 18th. Nevertheless, this Court has explained:

> [T]he rules do not prescribe a certain consequence in the event of a failure to comply. "[R]ule 905(a)(2) is procedural, not jurisdictional; therefore, we are not divested of our jurisdiction by non-compliance." We dismiss appeals for procedural defects sparingly, and will not do so when an appellant has substantially complied with the procedural rules and the opposing party has not been prejudiced.

*P.H.D. v. R.R.D.*, 56 A.3d 702, 705 (Pa. Super. 2012) (citations omitted). Here, Father has filed a Rule 1925(a)(2) statement, the trial court has filed a Rule 1925(a) opinion, and Mother has not objected. We decline to dismiss Father's appeal.

b.  Whether the [t]rial [c]ourt erred by giving improper weight to the evidence within the framework of the statutory custody factors.

c.  Whether the [t]rial [c]ourt erred in misapplying the facts to the framework of the statutory custody factors.

d.  Whether the [t]rial [c]ourt erred by not considering and/or giving insufficient weight to the testimony of the . . . [C]hildren.

e.  Whether the trial court erred when it hasted the conclusion of the case on the final day of [t]rial, depriving [F]ather of an opportunity to present adequate rebuttal evidence.

f.  Whether the [t]rial [c]ourt erred when it declined to receive the testimony of [M]other's paramour with[] whom she resides with the [C]hildren.

Father's Brief at 4.

We first note the relevant standard of review:

Our standard of review over a custody order is for a gross abuse of discretion.  Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias[,] or ill[-]will as shown by the evidence of record.

In reviewing a custody order,

[w]e must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations.  In addition, with regard to issues of credibility and weight of the evidence, we must defer to the [trial court] who viewed and assessed the witnesses first-hand.  However, we are not bound by the trial court's deductions or inferences from its factual findings.  Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record.  We may reject the conclusions of the trial court only if they involve an error of law,

> or are unreasonable in light of the sustainable findings of the trial court.
>
> As with all custody matters, "the paramount concern is the best interest of the [child] involved."

***Rogowski v. Kirven***, 291 A.3d 50, 60-61 (Pa. Super. 2023) (citations omitted).

In his first issue, Father avers the trial court abused its discretion in finding Mother's move was not a "relocation" and thus not undertaking review of the relocation factors under Section 5337(h). The Child Custody Act defines the term "relocation" as "[a] change in residence of the child which **significantly impairs** the ability of a nonrelocating party to exercise custodial rights." 23 Pa.C.S.A. § 5322(a) (emphasis added); ***see also*** Pa.R.C.P. 1915.17(a). In interpreting this statutory language, this Court has determined: "[W]hile relocation is in part defined by a change in residence of the child, it is evident that a relocation as contemplated in the statute requires a negative custodial impact on a 'nonrelocating party.'" ***D.K. v. S.P.K.***, 102 A.3d 467, 472 (Pa. Super. 2014). Section 5337(h) sets forth factors that a trial court must consider when a party seeks to relocate. ***See*** 23 Pa.C.S.A. § 5337(h)(1)-(10).

Father argues he presented "ample evidence" at the hearing to show Mother's move was, in fact, a "relocation" under the Child Custody Act. In

support, Father contends Mother moved forty-seven miles[7] away from both his residence and the Children's schools, resulting in the Children having to "spend unnecessary time," more than two hours per day, commuting to school. Father's Brief at 10-11. Father further reasons that, because K.K.'s middle school and T.K. and A.K.'s elementary school have different hours, the younger children must "spend an hour in the car" after K.K. is dropped off, while K.K. must spend an hour in the car after school, waiting for the younger children to finish. *Id*. Father contends this schedule "has eliminated the [C]hildren's ability to complete homework and study." *Id*. Father avers the trial court erred in not finding Mother's move was a relocation and not undertaking an analysis of the Section 5337(h) relocation factors.

The trial court concluded that Mother's change of residence did not constitute a "relocation" within the meaning of the Child Custody Act. It reasoned:

> While Mother's [new] residence is approximately thirty-eight miles from her prior residence in Freemansburg, since her move to New Jersey, the parties have continued to share physical custody equally. Moreover, Father has not missed any periods of physical custody with the Children, the Children have attended school, church, and all activities in Bethlehem, and Father has not had to transport the Children to or from Mother's residence. For these reasons, Mother's move has not impaired, let alone significantly,

---

[7] The trial court stated that the distance between Mother's new residence and her former Freemansburg residence is thirty-eight miles, and the drive forty-five minutes. *See* Trial Court Opinion, 9/21/23, at 5, 12. Father does not cite the record for his contrary claims that the distance is instead 46.5 miles and the drive is more than one hour. *See* Father's Brief at 5, 6, 10.

> Father's ability to exercise his custody rights. . . . [T]here has been no relocation under the law.

Trial Court Opinion, 9/21/23, at 5.

We conclude the certified record supports the trial court's conclusions. As stated above, a "relocation" is not merely one parent's change in residence, but a move that "significantly impairs" the ability of the nonrelocating party to exercise his custodial rights. 23 Pa.C.S.A. § 5322(a). At the hearing, Father not only agreed that Mother's move did not negatively impact his custody time, but he stated, "If anything, I have more time." N.T., 9/12/24, at 105. On appeal, Father again does not raise any claim that his custodial rights have been impacted in any manner.

Instead, Father's argument is that the Children will need to spend more time in the car on days that Mother takes them to and from school. Even if true, this factor alone does not render Mother's move to be a "relocation," as there was no evidence, and indeed no claim, that Father's custodial rights were "significantly impair[ed]."[8] *See* 23 Pa.C.S.A. § 5322; *see also D.K.*,

---

[8] In any event, the trial court addressed Father's claim, regarding the Children's longer commute times, when it considered the general custody factor at Section 5328(a)(11) — the proximity of the residences of the parties. *See* 23 Pa.C.S.A. § 5328(a)(11). The trial court reasoned:

> While [the forty-five minute drive] is certainly inconvenient in terms of the Children's education, activities, and attending church, the court cannot say that this one factor should outweigh all of the others. Moreover, the parties have worked out a schedule that only requires such transportation two times in one week and

*(Footnote Continued Next Page)*

- 10 -

102 A.3d at 472. In any event, at the hearing, Father, K.K., and T.K. all agreed that Mother has taken the Children to school on time. N.T., 9/11/23, at 85, 134; *see also* N.T., 9/12/23, at 105-06. Based on the foregoing, there was no abuse of discretion or error of law in the trial court's finding that, in the absence of any impairment to Father's custody rights, no "relocation" occurred within the meaning of the Act. *See* 23 Pa.C.S.A. § 5322(a). Accordingly, we conclude no relief is due on Father's first issue.

Father addresses together his second and third issues — that in considering the Section 5328(a) custody factors, the trial court gave improper weight to some of the evidence and erred in misapplying some facts. As stated above, in all custody matters, "the paramount concern is the best interest of the [child] involved." *Rogowski*, 291 A.3d at 61 (citation omitted); *see also* 23 Pa.C.S.A. § 5338(a) (stating that "[u]pon petition, a court may modify a custody order to serve the best interest of the child").

Section 5328(a) of the Child Custody Act sets forth seventeen factors that a court must consider before entering any custody order:

> **(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all

---

three times in the following week. Additionally, the parties have ensured that the Children are able to attend their activities and church, despite the distance between their residences. . . .

Trial Court Opinion, 9/21/23, at 12. Notably, the trial court found this particular factor in Father's favor. On appeal, Father raises no challenge to this analysis by the trial court.

- 11 -

relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a)(1)-(16). "It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *E.B. v. D.B.*, 209 A.3d 451, 468 (Pa. Super. 2019).

We address together, as did Father, his second and third issues. He alleges that in reviewing the Section 5328(a) custody factors, the trial court gave improper weight to some of the evidence and misapplied the facts. In support, Father challenges all three of the factors that the trial court found in Mother's favor, as well as two factors that the court found were weighted equally and thus were in neither party's favor. With respect to the first statutory factor — "[w]hich party is more likely to encourage and permit frequent and continuing contact between the child and another party" — Father maintains he presented evidence that "Mother often engages in behavior that alienates the [C]hildren from" him, including trying "to

'convince' the [C]hildren that living in New Jersey is 'better' than living in Pennsylvania." Father's Brief at 14 (*citing* 23 Pa.C.S.A. § 5328(a)(1)).

With respect to the second statutory factor — any abuse committed by a party — Father argues the record lacks "significant" evidence of abusive behavior by him. *Id*. (*citing* 23 Pa.C.S.A. § 5328(a)(2)). Father points out the final PFA order against him was entered "without admission of liability." *Id*. (emphasis omitted).

With respect to the third statutory factor — each party's performance of parental duties — Father claims he is more attentive, and that Mother is "absent," has "poor decision making," and "has taken many extended vacations in the past year with [Fiancé] and/or visiting family in Greece." *Id*. at 14-15 (*citing* 23 Pa.C.S.A. § 5328(a)(3)). Father avers he "always ensures the [C]hildren are transported safely and . . . timely . . . to school" and assists with homework, while Mother does not. *Id*. at 14. He asserts that when the Children are in his custody, they have home-cooked meals, while "Mother often feeds the [C]hildren fast food." *Id*.

With respect to the seventh statutory factor — a child's well-reasoned preference, based on his maturity and judgment — Father cites K.K.'s stated desire to live with him. Father's Brief at 15 (*citing* 23 Pa.C.S.A. § 5328(a)(7)). Father claims the trial court's reasoning, that K.K.'s preference was not based on mature judgment, was not supported by the record and conversely, K.K. is mature.

With respect to the tenth statutory factor — which party is more likely to attend to the child's daily physical, emotional, developmental, educational and special needs — Father cites, without further discussion, the "ample evidence" that he is more likely to tend to the Children's needs. *Id*. at 15 (*citing* 23 Pa.C.S.A. § 5328(a)(10)).

As noted above, the trial court reviewed each of the Section 5328 factors and found seven factors — Subsections (1), (6), (7), (8), (9), (12), and (16) — were equally weighted and thus were in neither party's favor. The court also found: three factors in Mother's favor — (2), (3), and (10); two factors in Father's favor — (4) and (11)); and two not relevant — (14) and (15).[9]

The trial court determined the first statutory factor — which party is more likely to encourage contact between the child and another party — favored neither parent. The trial court found that "[a]lthough the parties' relationship is strained,[10] it appears that both parties foster frequent and

---

[9] The trial court did not address two factors: Section 5328(a)(2.1), related to child abuse and (5), the availability of extended family. However, neither party has objected.

[10] Relatedly, in discussing the eighth statutory factor — a parent's attempts to turn the child against the other parent — the trial court cited the contentious relationship between Father, Mother, and Parental Grandmother. *See* Trial Court Opinion, 9/21/23, at 9-10. The trial court opined:

> As a result, the Children are guarded in how they approach each parent for fear of hurting the other parent. It is apparent that this is causing unnecessary emotional turmoil for the Children. It also appears . . . that, at times, the parties are more interested in

*(Footnote Continued Next Page)*

continuing contact between the Children and the other party, as evidenced by their ability to work out a shared custody schedule after the entry of their Marital Settlement Agreement." Trial Court Opinion, 9/21/23, at 6-7.

While Father claims he "produced evidence that Mother often engages in behavior that alienates the [C]hildren from" him, his sole explanation is that Mother tried "to 'convince' the [C]hildren that living in New Jersey is 'better' than living in Pennsylvania." Father's Brief at 14 (*citing* 23 Pa.C.S.A. § 5328(a)(1)). Father does not, however, cite the place in the record where this evidence was presented. *See* Pa.R.A.P. 2119(c) (stating that if reference is made to evidence, argument must cite the place in the record where the matter appears). Our review of the record, including the testimony at the hearing, shows that the parties have been coparenting the Children. There is no evidence, and Father makes no claim, that Mother has withheld the Children during his periods of physical custody, or interfered with his custody

---

winning an argument with each other than in making sure those arguments are not heard by, and do not damage, the Children. Nevertheless, it is clear that the Children, who have now been interviewed by three judges, have been damaged by the parties' contentious and litigious relationship and their harmful approach to each other. For these reasons, this factor does not favor either party, but the court sincerely hopes that the parties and their families will eventually decide to put their Children first, and will begin to treat each other with the same respect and kindness that they would want others to treat their Children with.

*Id*. at 10.

rights. After careful review, we conclude the record supports the trial court's findings as to the Section 5328(a)(1) factor.

The second statutory factor concerns whether a party has committed present or past abuse and whether there is a continued risk of harm to the child. *See* 23 Pa.C.S.A. § 5328(a)(2). The trial court found this factor favored Mother due to the earlier entry of a PFA order against Father. Father denies there was "significant evidence of abusive behavior by [him] — particularly against or in the presence of the [C]hildren." Father's Brief at 14. Additionally, he asserts the final PFA order was entered "without admission of liability." *Id*. (emphasis omitted).

Father's contention, that there was no physical abuse in the Children's presence, is belied by the record. K.K. testified that he witnessed or heard the Parents' argument immediately preceding the physical assault. *See* N.T., 9/11/23, at 46. K.K. observed that Mother had a "big bruise," and that she stated Father had "shoved her into the pantry door." *Id*. at 47. Under our standard of review, we defer to the trial court's credibility and weight of the evidence determinations, as it viewed and assessed the witnesses first-hand. *See Rogowski*, 291 A.3d at 60-61. The trial court did not cite any other instances of physical abuse in the home, and its findings do not demonstrate an abuse of discretion. After careful review, we conclude the record supports the trial court's findings as to the Section 5328(a)(2) factor.

Next, the trial court found that the third statutory factor — each party's performance of parental duties — weighed in Mother's favor. The court reasoned:

> During the parties' marriage, Mother did not work and was the primary caregiver for the Children. After the parties' separation, Mother continued to serve in that role until the parties began sharing custody in April 2023. Since then, both parties have performed parental duties equally. However, when the Children are with Father, [Paternal Grandmother] does almost all of the cooking, cleaning, and laundering for the Children. . . .

Trial Court Opinion, 9/21/23, at 7-8.

Father does not cite the place in the record to support his claim that he is "more attentive to the [C]hildren in performing parental duties than Mother," who he claims does not help the Children with homework, gives them "fast food" for meals, and takes "extended vacations." Father's Brief at 14-15. To the contrary, at the hearing, Father agreed that Mother was "a good mom," and the Children love her and "have no issues with her" fiancé. N.T., 9/12/12, at 107. Mother testified that she does assist the Children with homework, and she takes them to all their medical appointments. *See* N.T., 9/12/23, at 205. Additionally, Mother took the Children to the playground, movies, and restaurants, and she took them to visit her brother as well as friends. *Id*. at 213-14. K.K. testified that "sometimes when there's activities" after school, Mother has picked up fast food, but he also agreed that Mother cooks "most of the time[.]" N.T., 9/11/23, at 83-84.

Father does not refute the trial court's discussion that it is Paternal Grandmother who undertakes "almost all" of the cooking and cleaning for the Children when they reside at his home. At the hearing, Paternal Grandmother testified that she washed the Children's laundry, kept them clean, took them out for walks, read Greek books with them, and sometimes took them to school. *See* N.T., 9/12/23, at 165-66. All of the witnesses' credibility and the weight of the evidence were for the trial court to assess. The trial court's findings are supported by the record. Thus, after careful review, we conclude the record supports the trial court's findings as to the Section 5328(a)(3) factor.

Father's next argument concerns the seventh factor, "[t]he well-reasoned preference" of the Children, based on their respective "maturity and judgment." 23 Pa.C.S.A. § 5328(a)(7). The trial court summarized that the younger children, T.K. and A.K., both stated they wished to share equal time with both Parents. K.K., however, expressed a wish to live with Father during the school year. However, the trial court found K.K.'s preference was not based upon mature reasoning:

> K.K's desire was based solely on his fear that he would be late for school if transported to school from Mother's residence. However, at the time he testified, K.K. had never been transported to school by Mother from New Jersey. For this reason, the court does not believe that K.K's preference is based on the type of mature judgment that would require the court to make such an accommodation. . . . For the above reasons, this factor does not weight in favor of either party.

Trial Court Opinion, 9/21/23, at 9.

- 19 -

Father disputes the trial court's reasoning, and argues that "the record displays [K.K.'s] maturity given his age and the [c]ourt should have accommodated his preference to be with Father." Father's Brief at 15. Father does not cite any supporting evidence, however, or present any further discussion of, this bald claim.

At the hearing, Father agreed that Mother has never been late in transporting the Children to school. Additionally, Father testified that K.K. has a history of anxiety, and that he "panic[s] a lot" and has insecurities. N.T., 9/12/23, at 15. Father then acknowledged that he has told K.K. that if he stays with Mother, being late to school "is likely going to happen," but if K.K. stayed with Father, "it's not going to happen." *Id*. at 116. When asked whether it would "have been better to reassure [K.K.] and say . . . Mom's got this, Mom's going . . . to get you . . . to school on time," Father maintained that because K.K. was "frightened" about this issue, he was right to have this conversation with his child. *Id*. Meanwhile, K.K. confirmed that Father told him it would be better to stay at his house, explaining Father did not want the Children to be late to school when they stay with Mother. N.T., 9/11/23, at 85.

Again, we defer to the trial court's assessment of K.K.'s testimony and maturity. Father's vague and unsupported argument on appeal, that K.K. is mature for his age, goes to his credibility and the weight to be given his testimony, which were for the trial court to assess. Finally, we note Father

ignores A.K.'s and T.K.'s testimony that they wish to continue having equal time at Parents' respective homes. After careful review, we conclude the record supports the trial court's findings as to the Section 5328(a)(7) factor.

Next, Father challenges the trial court's findings with respect to the tenth statutory custody factor — which party is more likely to attend to the Children's daily physical, emotional, developmental, educational and special needs. The trial court concluded this factor weighed "slightly in favor of Mother." Trial Court Opinion, 9/21/23, at 11. The court reasoned that while "[b]oth parties are likely to attend to [the Children's] needs equally[,]" when the Children are in Father's care, it is Paternal Grandmother who "mostly attends to their physical needs." *Id*. The court also considered the Children's sleeping arrangements at both houses. At Father's three-bedroom home: (1) Father sleeps in one bedroom; (2) "K.K. has a bedroom on the third floor but does not use it[,]" and instead he sleeps on the top bunk in the other bedroom, while T.K. and A.K. sleep together in the bottom bunk; and (3) "[n]o one clearly explained where" Paternal Grandmother sleeps. *Id*. Meanwhile, at Mother's home: (1) T.K. sleeps "in K.K.'s room, sometimes waking him up;" and (2) Mother and A.K. sleep together in T.K.'s room. The trial court opined that the two boys, K.K. and A.K., should have separate bedrooms from T.K., and neither Parent should sleep with the Children.

Father does not address any of the trial court's reasoning. Instead, the sum of his argument is that: (1) there was "ample evidence that [he] is more

likely to tend to the" Children's needs; and (2) "[o]verall, and considering the best interests of the [C]hildren, the evidence and testimony . . . support[] an award of sole physical custody in" his favor. Father's Brief at 15. In the absence of any discussion why the trial court abused its discretion or erred, we conclude no relief is due. We thus do not disturb the trial court's findings with respect to the Section 5328(a)(10) factor. In light of all the foregoing, we conclude Father is not entitled to relief on his second and third issues.

In his fourth issue, Father avers the trial court gave insufficient weight to the Children's testimony, "particularly" K.K.'s statements about his desire to live with Father. Father's Brief at 16. Father points out that K.K. testified it was important to him that he can walk from Father's home to school, and his jiu jitsu lessons and church are located near Father's home in Bethlehem. Father concludes the trial court erred in dismissing K.K.'s preference to live with him.

We incorporate our discussion above, regarding the Section 5328(a)(7) factor — the child's "well-reasoned preference . . . based on the child's maturity and judgment." **See** 23 Pa.C.S.A. § 5328(a)(7). The trial court did consider K.K.'s stated preference to live with Father during the school year, along with K.K.'s "sole[]" reason — his fear of being late for school when coming from Mother's home. Trial Court Opinion, 9/21/23, at 9. As stated above, the trial court observed that at the time of the hearing, K.K. had not yet been transported to his middle school from Mother's residence, and thus

found K.K.'s preference was not based on a mature judgment warranting a modification to the custody schedule. We defer to the trial court's credibility determinations and conclude the trial court's findings are supported by the record. Thus, Father is not entitled to relief on his fourth issue.

In his fifth issue, Father contends the trial court erred in precluding the Children's "therapist" from testifying at the hearing. Father's Brief at 16. We note that "[t]he decision to admit or to exclude evidence, including expert testimony, lies within the sound discretion of the trial court." *A.J.B. v. M.P.B.*, 945 A.2d 744, 749 (Pa. Super. 2008) (citation omitted). "To constitute reversible error, an evidentiary ruling must be both erroneous and prejudicial to the complaining party." *Id*. at 751.

Father argues the Children's therapist could have provided "valuable insight" on the effects of Mother's relocation on the Children's mental health." Father's Brief at 16, 18. Father concludes the trial court committed reversible error in not allowing the therapist to testify.

By way of context, we first summarize that at the hearing, Father sought to call the Children's school counselor, who treated with the Children before and after Mother's move to New Jersey. *See* N.T., 9/11/23, at 174. Father's counsel stated the counselor was *not* qualified to make a custody recommendation to the trial court, nor opine as to what was in the Children's best interest. *Id*. at 175. Instead, counsel argued, the counselor would testify about what the Children disclosed in therapy and describe the Children's

"angst and [their] need to see her over this move to New Jersey." *Id.* at 175, 181. Mother objected on the bases that such testimony would be privileged, as well as impermissible hearsay. *Id*. at 175-76. The trial court agreed with both objections and thus excluded the testimony. *Id*. at 182.

On appeal, Father does not address the issues of privilege or hearsay, which were the legal bases for the trial court's exclusion of the counselor's testimony. Furthermore, Father fails to explain what the counselor would have particularly testified, nor explain how was prejudiced by the trial court's ruling. In the absence of any such discussion, we determine that Father has waived his claim for lack of development. *See C.H.L. v. W.D.L.*, 214 A.3d 1272, 1276 (Pa. Super. 2019) (stating "that the failure to develop an argument with citation to, and analysis of, pertinent authority results in waiver of that issue on appeal").

Furthermore, we find distinguishable the caselaw that Father has cited in support of his proposition, that while a trial court is not required to **accept** an expert witness' conclusion, it must at least **consider** it. Father's Brief at 17 (*citing M.A.T. v. G.S.T.*, 989 A.2d 11, 20 (Pa. Super. 2010) (*en banc*)). Father did **not** offer the counselor as an expert witness, and Father advised the trial court that she was not qualified to opine as to Children's best interests. Accordingly, Father's reliance on this authority, concerning an expert witness' conclusion, is unavailing. After careful review of the

procedural posture behind the trial court's ruling and Father's argument, we conclude that no relief is due on his fifth issue.

In his final issue, Father avers the trial court erred in not hearing testimony from Mother's fiancé. Father reasons that Fiancé's testimony would have been relevant to determining the Children's best interests, because he lived with the Children. **See** Father's Brief at 18. We determine this issue is waived.

It is well-established that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Furthermore, a party may claim error in a ruling to exclude evidence only where the "party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." Pa.R.E. 103(a)(2).

Father fails to cite the place in the record where he attempted to adduce Fiancé's testimony during these proceedings. **See** Pa.R.A.P. 2119(c). Our review of the notes of testimony reveals that at the conclusion of the second day of the hearing, Mother's counsel advised that although she did not intend to call Fiancé to testify, he was available to testify. **See** N.T., 9/12/23, at 275-76. Father's counsel did not object, nor did he make any attempt to call Fiancé as his own witness. As there was no indication that Father ever attempted to present Fiancé's testimony, this claim is waived on appeal. **See** Pa.R.E. 103(a)(2); **see also** Pa.R.A.P. 302(a).

Furthermore, Father fails to explain to what Fiancé would have testified, nor how Father was prejudiced by the absence of Fiancé's testimony. Instead, Father vaguely postulates that because Fiancé lived with the Children, his testimony would have been "relevant" in determining the Children's best interests. Father's Brief at 18. Accordingly, Father's claim is also waived for failure to develop his argument. *See* Pa.R.A.P. 2119(a); *see also Coulter v. Ramsden*, 94 A.3d 1080, 1088 (Pa. Super. 2014) (stating that "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant"). We conclude Father's sixth and final issue merits no relief.

In sum, we conclude that the evidentiary record supports the trial court's conclusions, that Mother did not "relocate," as that term is defined in the Child Custody Act, and that continued shared physical custody was in the Children's best interests. We defer to the trial court's credibility determinations and assessment of the weight of the evidence. Furthermore, Father's evidentiary claims are waived, as discussed above. Accordingly, we affirm the trial court's custody order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date:  4/17/2024